IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**FLEXFAB, L.L.C.,** a Michigan Limited Liability Company, successor to Flexible Horizons International, Inc., d/b/a Flexfab

Plaintiff,

v.

**UNITED STATES OF AMERICA,**

Defendant.

Case No. 02-1096 C

Hon. Lawrence J. Block

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# EXHIBIT F

IN THE UNITED STATES COURT OF
FEDERAL CLAIMS

- - -

Flexfab, LLC, a Michigan Limited Liability Company, Successor to Flexible Horizons International, Inc., d/b/a Flexfab, Plaintiff,

vs.

Case No. 02-1096 C
Judge Lawrence J. Block

United States of America, Defendant.

- - - - -

DEPOSITION OF MALINDA JEFFRIES

- - - - -

Taken at Defense Supply Center
3990 East Broad Street
Columbus, Ohio 43213
December 9, 2003, 2:23 p.m.

- - - - -

Spectrum Reporting LLC
333 East Stewart Avenue
Columbus, Ohio 43206
614-444-1000

- - - - -

Spectrum Reporting, LLC
Specializing in Real-Time Reporting



A P P E A R A N C E S

ON BEHALF OF PLAINTIFF:

Perrin Rynders, Esq.
Varnum, Riddering, Schmidt, Howlett
Bridgewater Place, Post Office Box 352
Grand Rapids, MI 49501

ON BEHALF OF DEFENDANT:

Claudia Burke, Esq.
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

ALSO PRESENT:

Vasso Monta



Tuesday Afternoon Session
December 9, 2003, 2:23 p.m.

- - - - -

S T I P U L A T I O N S

- - - - -

It is stipulated by and between counsel for the respective parties that the deposition of MALINDA JEFFRIES, a witness herein, called by the Plaintiff for cross-examination, may be taken at this time by the notary pursuant to notice and by agreement of counsel; that said deposition may be reduced to writing in stenotypy by the notary, whose notes may thereafter be transcribed out of the presence of the witness; that proof of the official character and qualification of the notary is waived.

- - - - -



MALINDA JEFFRIES

being first duly sworn, as hereinafter certified, testifies and says as follows:

CROSS-EXAMINATION

- - - - -

MR. RYNDERS: The record should reflect that this is the time and place for the taking of the deposition of Malinda Jeffries. Any objections to notice?

MS. BURKE: No.

BY MR. RYNDERS:

Q. Ms. Jeffries, my name is Perrin Rynders. I represent a company by the name of Flexfab, at least the short term -- the shortened word that we'll use.

A. Okay.

Q. Have you given a deposition before?

A. No, I have not.

Q. Let me give you a few ground rules that I'd like all of us to follow.

A. Okay.

Q. First of all, my job is to ask questions. Your job is to answer them to the best of your ability.

in determining whether or not the contract modification should take place?
A. Yes.
Q. And what was your role in that regard?
A. I would -- in my determining whether or not a modification should take place on a contract, I would receive some type of correspondence from the contractor, and my determination would be made after receiving that correspondence.
Q. Okay. Do you remember receiving correspondence from Capital City Pipes?
A. No, I do not.
Q. Regarding any modifications?
A. No, I do not.
Q. Do you remember getting any correspondence regarding modifications as to the delivery dates or the timing of delivery of products?
A. No, I do not.
Q. And I take it you don't remember anything about a modification to change the payee address?
A. No, I do not.



Q. Let's -- but your standard procedure would have been that something would have come to you?
A. Exactly.
Q. And then you would have processed it?
A. Exactly.
Q. Now, if the contractor says, please change the contract so that the payee address is a new address instead of the original address, do you automatically do that?
A. If it is the prime contractor whom which we have the contract with, yes, I would.
Q. Okay. Can you imagine any scenario under which you would say, we don't want to do that or we don't understand the purpose of that, so we're going to decline your request for modification?
A. No.
Q. Okay. What are the factors that you follow -- or that you use, rather, in evaluating a request to modify a contract?
A. It greatly depends on what the request is.
Q. Okay. What about the request to change



the payee address?
A. The factors that I would use to change a contractor's payee's address, that I received a piece of letterhead from the contractor whom we have the contract with, that the contract is still open, it has not been paid yet. And that's all I can think of at this time.
Q. Okay. Is there anybody other than you who would have any input into whether or not to grant the request for modification? Anybody other than you from the DSCC side?
A. There is no one that I would have went to to request any additional information from, no.
Q. Okay. Is it your understanding, sitting here today, that, in fact, the modification was made to change the payee address?
A. Your question is, do I understand that a modification was issued to change that contractor's payee address on that contract? Yes.
Q. Okay. And your testimony, if I understand it, is that was your decision and your decision alone whether to grant that modification?
A. From what I recall, yes.
Q. Okay. Do you know why the contractor



made that request?
A. No, I do not.
Q. What is the process that is followed to implement that request? And here's what I'm wondering: Something comes in the mail or is faxed or is somehow received by the DSCC where a contractor seeks to modify an original contract to change where the money gets sent. Okay?
A. Okay.
Q. Our scenario. And somehow, I guess you're identified as the post-award contract specialist?
A. Right.
Q. Okay. So wherever that fax machine is or the mail comes in, somebody can figure out that I need to get this piece of paper to Ms. Jeffries?
A. Yes.
Q. Okay. So now you've received that piece of paper, and you determine that the contract is still open and that the request has come from the prime contractor. And at that point in time, you decide to go forward with the modification; is that correct?

APP-87

17

A. In that scenario, I would possibly, yes.

Q. Okay. Now, what -- physically, what do you do? What steps do you go through at that point?

A. I would go into our -- at that point, in 1999, I do believe that we had a system which is now -- it's called DPACS. I would have went into the system and processed the modification and distributed it to the parties who would need a copy.

Now, the system would automatically tell me which party needs a copy. But other than the system actually doing the distribution, I would have sent everyone a copy of the mod up-front.

Q. Okay. Now, that document, we'll probably look at it in a moment. I believe it was given the document number P1. Do you remember that?

A. I don't recall. I don't recall.

Q. That's fine. The best you can do is what you recall today. Is whatever that document's called or whatever number its given,

18

are you the one who types it up?

A. Yes

Q. And you do that in the computer?

A. Yes.

Q. There is probably some kind of form that you fill in the blanks, and then you can print that completed form? Is that how it works?

A. Sort of, yes.

Q. Okay. I mean, if we see something that's been printed out, are you the one who prints it for the first time?

A. Yes.

Q. Okay. And the information in there that's not part of the blank form but that's filled in, you would have typed that information into the computer?

A. That's correct.

Q. Okay. Now, when the change has to do with where the money gets sent, is there anything else that needs to be done to make sure that the modification is, in fact, followed?

A. As far as I know, any additional function that I would have to make, I do not believe so.

19

Q. Okay. Now, are you the person that handles the payments?

A. No, I am not.

Q. Who handles the payments?

A. DFAS.

Q. And -- D-F-A-S?

A. Yes.

Q. And what does that stand for?

A. Defense Finance and Accounting Service.

Q. Okay. Are they located here in Columbus?

A. Yes, they are.

Q. And how does DFAS know, if you know, that a modification has been made to the contract regarding the payment process?

A. A copy is forwarded to them.

Q. Okay. Now, is that copy forwarded to them -- is a physical copy forwarded to them, or do they receive an electronic notice of that change?

A. A physical copy is forwarded to them, and I do believe that DPACS -- somehow they have the distribution at the bottom of the mod -- sends it off electronically also.

20

Q. Okay. And DPACS is the computer program?

A. Right.

Q. Okay. Do you know, from your own knowledge, whether or not DFAS has to key in any additional information into its system to accomplish the modification that you've entered into?

A. I have no idea.

MR. RYNDERS: Okay. Just for the record -- and we'll work through this, but this is really for counsel to confirm. My understanding is that this witness has been produced to respond to the Rule 30(b)(6) deposition notice, items 3, 4, 5, 7, 10, and 13, is that correct?

MS. BURKE: That's correct.

MR. RYNDERS: Okay. Let's go off the record a minute.

(A discussion is held off the record.)

Q. Ms. Jeffries, let me show you what was marked previously during an earlier deposition as Exhibit 4. And I'll hand that to you, and I might have to look at it with you a little bit upside down. But is this the modification?

A. This would be the modification -- or yes, this is the modification.
Q. Okay. As I understand, and as far as you know, am I correct that the original contract remains in place, but it's changed to whatever extent this modification says it's changed?
A. Exactly.
Q. Okay. And can you tell me what it was that this particular modification changed about the original contract?
A. The remittance address.
Q. And what was the new remittance address?
A. According to this modification, it's Old Kent Bank Corp. Trust, C/O No., ABA No. 07200052, Post Office Box 144, Grand Rapids, Michigan 49501-0144.
Q. Do you know why the remittance address is being changed from the original address to this address?
A. No, I do not.
Q. Okay. Did it matter to you at the time when you executed the contract modification why it was being changed?



A. No, it does not.
Q. Would you have done something different depending on what the reasoning was?
A. No.
Q. Okay. All that mattered to you was that the prime contractor requested it, and, therefore, you did it?
A. That's correct.
Q. And what was the date of this modification?
A. September 27, 1999 is the date signed.
Q. Okay. And that's your signature --
A. Yes, it is.
Q. -- down at the bottom right?
A. Yes, it is.
Q. Okay. To whom was this modification distributed?
A. The distribution at the bottom tells me it was distributed to DCMC. That's Defense Contract Management Command in Clearwater and DFAS, Columbus Center. Defense Finance and Accounting Center.
Q. Okay. And whether it did or not, at least this modification should have been provided



to DFAS?
A. According to this, it should have been.
Q. Okay. Now, are you the one who generated the distribution list at the very bottom of this exhibit?
A. The system does that automatically.
Q. Okay. Can you override that?
A. No, but I can add to it.
Q. Okay. So do you remember if you needed to add DFAS, or was DFAS an automatic recipient?
A. This was automatic.
Q. And was DFAS an automatic recipient simply because it was a contract modification or because the modification involved the remittance address?
A. DFAS is a recipient simply because it's a contract modification.
Q. Okay. So even a non-monetary or non-economic change still goes to DFAS?
A. It should.
Q. Okay. Fair enough. It would automatically be on the distribution list?
A. It would automatically be on the distribution list through the DPACS system.



Q. Okay. Let me take that back from you a moment. Thank you. If at any time you want to see this again, just let me know. I'll pull it out.
A. Okay.
Q. It's Exhibit 4. Instead of taking it out of my book, I'm going to give you my whole book.
A. Okay.
Q. Let me show you what's been marked as Deposition Exhibit 3. That's from an earlier deposition as well. Do you recognize that to be the original contract?
A. I recognize this to be a copy of the contract, yes.
Q. Okay. Fair enough. It's definitely a photocopy.
A. Okay.
Q. Sorry. Everything in there is a photocopy.
A. Okay.
Q. So can you tell me the date of that original contract?
A. The date on this contract says June

29th, 1999.
Q. And my understanding is that this is a document that would have been prepared by the pre-award contract specialists?
A. Yes.
Q. And at that time that was Anita Luich?
A. Yes.
Q. Did you know Anita Luich back in 1999?
A. I believe so.
Q. Okay. And you definitely know her today?
A. I know who she is, yes.
Q. Okay. What was the original remittance address as of June 29, 1999?
A. They're written differently now, so I would have to search through this to find this information.
Q. That's okay.
A. Okay. Capital City Pipes, Inc., P.O. Box 12368, Tallahassee, Florida. I believe that's 32317.
Q. Now, was there anything according to this original contract that would indicate the original -- I'm sorry -- that indicate that



payment was to be made to a bank of Capital City Pipes? Or does it appear to you that the payment was to be sent directly to Capital City Pipes itself?
A. It appears to me that the payment was to be sent directly to this post-office box at Capital City Pipes in Tallahassee, Florida.
Q. Okay.
MR. RYNDERS: Let's go off for just a moment.
(A short recess is taken.)
Q. We're back on the record.
MS. BURKE: I think Ms. Jeffries actually has a clarification to make.
Q. Okay. You spoke to counsel during our break, I take it?
A. Yes.
Q. So you want to fix something? That's fine. Go ahead.
A. I just wanted to -- I guess I want you to repeat your question regarding the remittance address.
Q. Well, let me -- you're looking at something. Can I see what it is that you're



looking at it?
A. Okay.
Q. And for the record, it appears that you're looking at a June 23, 1999 letter from Capital City Pipes. And at the top right-hand corner, it says 12 of 24. Do you see that?
A. Uh-huh.
Q. I would understand that -- 12 of 24 to mean that it is part of what is now the original contract?
A. That is correct.
Q. But it appears to have been dated a few days after the -- I'm trying to remember. What's the original date of the contract?
A. This is June 29th.
Q. Oh, 29. Okay.
A. Yes.
Q. So this letter dated June 23 would have been in existence, then, at the time of the contract, correct?
A. I assume so, yes.
Q. Okay. So you wanted to clarify something as to this letter which -- in the contract that's been marked page 12 of 24?



A. I wanted to clarify your question regarding what the remittance address -- what the contract showed as the remittance address in this letter being a part of the contract shows that the remittance address was, in fact, Capital City Pipes, Inc., C/O, ABA No. 07200052, Old Kent Bank Corp. Trust, P.O. Box 144, Grand Rapids, Michigan 49501-0144.
Q. Now, is there anywhere in the contract form -- and now I'm talking about something that would have been on your computer system -- that is other than that letter? Do you know?
A. I don't understand your question.
Q. Okay. We've got a 24-page contract.
A. Okay.
Q. Okay. The first page -- just turn back to the first page with me. You would see that that is a DSCC or, at least, a governmental form, correct?
A. Correct.
Q. Okay. Now, is there some reference on that first page that tells us where in the contract we're going to find the remittance address?

Q. Okay. Would it be fair to say that at least by the time of mod P2 that you were aware that Flexfab was the origin of the product?
A. No, I cannot say that because I do not recall.
Q. Okay. Certainly, P2 makes that clear? You would agree?
A. Makes what clear?
Q. That the origin of the product is Flexfab.
A. P2 does state that the place of inspection would be at Flexfab.
Q. Okay. And by definition, that means that Flexfab is the manufacturer of the product?
A. No.
Q. How could it be an inspection at the point of origin if Flexfab isn't the manufacturer? How would that work?
A. There's instances where the contractors will have the supplies at their plant or what have you and have the inspection done there.
Q. So you're familiar with scenarios where -- the analogy would be Flexfab would deliver its product to Capital City Pipes?



A. Right.
Q. That would be counted as the point of origin?
A. Right.
Q. But given the fact that this particular contract, the prime contractor is Capital City Pipes and the inspection is happening at Flexfab, that would pretty clearly tell you that Flexfab is manufacturing this particular product, wouldn't it?
A. I suppose you could come to that conclusion.
Q. Another area that you've been produced as being the person best able to testify has to do with communications between the United States and Capital City Pipes regarding the modification. I think we've gone through this too many times, but are you aware of anything that we have not marked as an exhibit that would be a communication between the United States and Capital City Pipes as to that particular modification?
A. No, I'm not aware of anything.
Q. Now, would you agree with you being the person identified as best able to testify about



payments from the United States to escrow accounts --
A. Would I agree that --
Q. -- escrow accounts controlled by subcontractors?
A. Would I agree that I would be the best person to talk to -- I'm sorry -- to testify --
Q. Yeah.
A. -- about payments to escrow accounts -- I'm sorry. What was the last part?
Q. Okay. Let me back up.
A. Okay.
Q. You're aware that in this particular case, the first contract modification had to do with changing the remittance address to a particular bank account?
A. I'm aware of that.
Q. At Old Kent Bank in Grand Rapids, Michigan?
A. Yes.
Q. Okay. Now, had you prior to that time -- I believe it was September of 1999 -- been involved either as a pre-award or post-award contract specialist regarding a contract that



required payment to an escrow account?
A. Any contract?
Q. Just anywhere along the line in your 13 years or whatever.
A. I don't recall. I do not recall.
Q. Okay. Do you recall at any point during your career here, either as a post or a pre-award contract specialist, the idea of payment being made to a subcontractor instead of to the prime contractor?
A. There are situations where contracts and payments and everything that the contractor may have opened is assigned to a different contractor, and those are what we call novation agreements.
Q. Okay.
A. Which are done between the contractor and the DCMC office.
Q. And remind me, what is DCMC?
A. Defense Contract Management Command.
Q. Okay.
A. And they are the administration office that would be better located to oversee contractor's actions or --

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

**FLEXFAB, L.L.C.**, a Michigan Limited Liability Company, successor to Flexible Horizons International, Inc., d/b/a Flexfab

Plaintiff,

v.

**UNITED STATES OF AMERICA**,

Defendant.

Case No. 02-1096 C

Hon. Lawrence J. Block

---

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# EXHIBIT G

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

1. CONTRACT ID CODE: [X] J [ ] K
PAGE OF PAGES: 01 | 01

| | | | |
|---|---|---|---|
| 2. AMENDMENT/MODIFICATION NO. P00001 | 3. EFFECTIVE DATE SEP 27 1999 | 4. REQUISITION/PURCHASE REQ. NO. YPC98169000611 + | 5. PROJECT NO. (if applicable) |
| 6. ISSUED BY CODE SC0700 | | 7. ADMINISTERED BY (If other than Item 6) CODE S1109A | |

**6. ISSUED BY** (CODE SC0700)
DEFENSE SUPPLY CENTER, COLUMBUS
Post Office Box 16704
Columbus, Ohio 43216-5010

INITIATOR: M.A. Jeffries
DSCC-PAAEAAL (614) 692-2961, fax (614) 692-1238

**7. ADMINISTERED BY** (CODE S1109A)
DCMC CLEARWATER
GADSEN BLDG SUITE 200
9549 KROGER BLVD
ST PETERSBURG FL 33702-2455

**8. NAME AND ADDRESS OF CONTRACTOR** (No., street, county, State and Zip Code)

CAPITAL CITY PIPES INC
1872 MILLS ST SUITE F
TALLAHASSEE FL 32310-0205

CODE 0NSZ5 FACILITY CODE

[X] 9A. AMENDMENT OF SOLICITATION NO.

9B. DATED (SEE ITEM 11)

[X] 10A. MODIFICATION OF CONTRACT/ORDER NO. SP0740-99-C-1004

10B. DATED (SEE ITEM 13) 1999 JUN 29

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

[ ] The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers [ ] is extended, [ ] is not extended. Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning _______ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (if required)

SAME AS BASIC

13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14

| | | |
|---|---|---|
| X | A. | THIS CHANGE ORDER IS ISSUED PURSUANT TO: THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN CONTRACT ORDER NO. IN ITEM 10A. |
| X | B. | THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation data, etc.) SET FORTH IN ITEM 14. PURSUANT TOTHE AUTHORITY OF FAR 43.103(b). |
| | C. | THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| | D. | OTHER (Specify type of modification and authority) |

E. IMPORTANT: Contractor [X] is not, [ ] is required to sign this document and return _____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION
(Organized by section headings, including solicitation/contract subject matter where feasible.)

NSN: 4720-01-066-6447

The remittance address where cited throughout the contract is hereby corrected to read as follows:

Old Kent Bank, Corp Trust
CO# ABA# 07200052
P.O. Box 144
Grand Rapids, MI 49501-0144

Distribution: S1109A DCMC CLEARWATER, S33181 DFAS COLUMBUS CENTER

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| | |
|---|---|
| 15A. NAME AND TITLE OF SIGNER (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) MALINDA A. JEFFRIES Contracting Officer |
| 15B. CONTRACTOR/OFFEROR (Signature of person authorized to sign) 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA BY [signature] (Signature of Contracting Officer) 16C. DATE SIGNED SEP 27 1999 |

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

EXHIBIT

Deposition 4

DPACS SF30
Prescribed by GSA
FAR (48 CFR) 53.243

APP-93