IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**FLEXFAB, L.L.C.,** a Michigan Limited Liability Company, successor to Flexible Horizons International, Inc., d/b/a Flexfab

Plaintiff,

v.

**UNITED STATES OF AMERICA**,

Defendant.

Case No. 02-1096 C

Hon. Lawrence J. Block

VARNUM, RIDDERING, SCHMIDT & HOWLETT LLP
Perrin Rynders (P38221)
Mark E. Hills (P47524)
Attorneys for Plaintiff
Bridgewater Place, P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000
(616) 336-7000 – Facsimile

Claudia Burke
Commercial Litigation Branch
Civil Division
United States Department of Justice
Washington DC 20530
Attn: Classification Unit
1100 L Street NW, 8th Floor
(202) 307-0277
(202) 514-8624 – Facsimile

## PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS

Plaintiff, Flexfab, LLC, respectfully submits the following proposed findings of uncontroverted facts:

1. Flexfab is an elastomeric engineering company that specializes in the design and production of hose, ducts, flexible connectors, boots, bellows, and special shapes made from a wide range of materials for severe applications in the automotive, heavy

duty truck, aerospace, government, and broad industrial sectors. *See* DeCamp Affidavit, ¶ 4, Exh. A to Plaintiff's Brief in Support of Motion for Summary Judgment.

2. Flexfab's principal place of business is located in the City of Hastings, State of Michigan. *See* Taylor Dep. p. 19, lns 14-23, Exh. H to Plaintiff's Brief in Support of Motion for Summary Judgment.

3. The Defendant is the United States of America. *See* Defendant's Answer, ¶ 4.

4. For purposes of this case the Defendant acted through its Department of Defense, Defense Logistics Agency, Defense Construction Supply Center ("DSCC"). *See* Defendant's Answer, ¶ 4.

5. The United States' Small Business Administration maintains an 8(A) Program for socially and economically disadvantaged businesses. *See* Griffin Dep., p. 15, lns 11-18; p. 33, lns 16-21, Exh. K to Plaintiff's Brief in Support of Motion for Summary Judgment.

6. Flexfab was previously successful in a similar lawsuit against the Government in the Court of Claims. In 1994, Flexfab filed an action against the Government, Case No. 94-974C, based on the Government's failure to remit payment directly to Flexfab's address as required by a modified contract. Contrary to the language of the modified contract, the Government erroneously remitted payment directly to its prime contractor and not to Flexfab. On February 8, 1996, the United States Court of Federal Claims denied the Government's summary judgment motion and granted Flexfab's summary judgment motion on liability. The Court permitted recovery under a third-party beneficiary theory and based its decision on evidence that "clearly

demonstrat[ed] that the contract modifications were intended to benefit plaintiff [Flexfab].” *See* DeCamp Affidavit, ¶ 13, Exh. A to Plaintiff’s Brief in Support of Motion for Summary Judgment including the Court of Claims’ Opinion attached at Tab 1 of Exh. A.

7. Flexfab has developed a working history and business relationship with C&S Industrial Supply (“C&S”), a company owned by Mr. Henry Cook. *See* DeCamp Affidavit, ¶ 16, Exh. A to Plaintiff’s Brief in Support of Motion for Summary Judgment; Cook Affidavit, ¶ 6, Exh. B to Plaintiff’s Brief in Support of Motion for Summary Judgment; LaJoye Affidavit, ¶ 6, Exh. C to Plaintiff’s Brief in Support of Motion for Summary Judgment.

8. C&S and Flexfab have a long-standing relationship of dealing with each other on contracts through the 8(A) Program based upon C&S’ status as a Small Disadvantaged Business. *See* DeCamp Affidavit, ¶ 7, Exh. A to Plaintiff’s Brief in Support of Motion for Summary Judgment; Cook Affidavit, ¶ 7, Exh. B to Plaintiff’s Brief in Support of Motion for Summary Judgment; LaJoye Affidavit, ¶ 6, Exh. C to Plaintiff’s Brief in Support of Motion for Summary Judgment.

9. Over the years Flexfab has frequently served as one of the contractors to C&S and would frequently manufacture products required by a contract between C&S and the Government. *See* DeCamp Affidavit, ¶ 8, Exh. A to Plaintiff’s Brief in Support of Motion for Summary Judgment; Cook Affidavit, ¶ 6, Exh. B to Plaintiff’s Brief in Support of Motion for Summary Judgment; LaJoye Affidavit, ¶ 6, Exh. C to Plaintiff’s Brief in Support of Motion for Summary Judgment.

10. As a result, C&S, in connection with the receipt of an award from the Government, would contract with Flexfab to serve as the manufacturer of products required by a contract between C&S and the Government. *See* DeCamp Affidavit, ¶ 9, Exh. A to Plaintiff's Brief in Support of Motion for Summary Judgment; Cook Affidavit, ¶ 6, Exh. B to Plaintiff's Brief in Support of Motion for Summary Judgment; LaJoye Affidavit, ¶ 6, Exh. C to Plaintiff's Brief in Support of Motion for Summary Judgment.

11. In each of these contracts with C&S, Flexfab agreed to supply parts to the United States only if payment for its goods were made directly to Flexfab by way of a Flexfab controlled escrow account, thereby insuring that there would be no significant delay in Flexfab's receipt of payment for its goods. The particular escrow account used by Flexfab and C&S was located at Old Kent Bank in Grand Rapids, Michigan. *See* DeCamp Affidavit, ¶ 10, Exh. A to Plaintiff's Brief in Support of Motion for Summary Judgment; Cook Affidavit, ¶ 8, Exh. B to Plaintiff's Brief in Support of Motion for Summary Judgment; LaJoye Affidavit, ¶ 7, Exh. C to Plaintiff's Brief in Support of Motion for Summary Judgment.

12. Flexfab conducts all of its business with 8(A) Program and Small Disadvantaged Business contracts through an escrow account. *See* DeCamp Affidavit, ¶ 11, Exh. A to Plaintiff's Brief in Support of Motion for Summary Judgment; *See* LaJoye Affidavit, ¶ 8, Exh. C to Plaintiff's Brief in Support of Motion for Summary Judgment.

13. Flexfab insists on the use of the escrow account system of payment as a result of past contracts where such a payment plan was not in place and Flexfab experienced extensive delays in receiving payments directly from the contractors. *See* DeCamp Affidavit, ¶ 12, Exh. A to Plaintiff's Brief in Support of Motion for Summary

Judgment; Cook Affidavit, ¶ 9, Exh. B to Plaintiff's Brief in Support of Motion for Summary Judgment; LaJoye Affidavit, ¶ 9, Exh. C to Plaintiff's Brief in Support of Motion for Summary Judgment.

14. The contract at issue was specifically designated as an 8(A) contract, meaning the DSCC required that it be awarded to an 8(A) contractor. *See* Cook Affidavit, ¶ 11, Exh. B to Plaintiff's Brief in Support of Motion for Summary Judgment.

15. The product required by the DSCC was air ducting hose. *See* Cook Affidavit, ¶¶ 14, 18, 19, Exh. B to Plaintiff's Brief in Support of Motion for Summary Judgment.

16. Upon information and belief, in 1998, Flexfab was contacted by an 8(A) contractor, Capital City Pipes ("Capital City"). Capital City approached Flexfab to manufacturer the product that Capital City was to provide to the Government. *See* DeCamp Affidavit, ¶ 14, Exh. A to Plaintiff's Brief in Support of Motion for Summary Judgment; Cook Affidavit, ¶ 13, Exh. B to Plaintiff's Brief in Support of Motion for Summary Judgment; LaJoye Affidavit, ¶ 10, Exh. C to Plaintiff's Brief in Support of Motion for Summary Judgment.

17. Since Flexfab had never worked with Capital City and had previously decided to not take on any new 8(A) customers, Flexfab refused to enter into a direct contract with Capital City. *See* DeCamp Affidavit, ¶ 15, Exh. A to Plaintiff's Brief in Support of Motion for Summary Judgment; Cook Affidavit, ¶ 17, Exh. B to Plaintiff's Brief in Support of Motion for Summary Judgment.

18. Flexfab told Capital City that C&S was its minority supplier, that it was not taking on any new 8(A) customers and that if Capital City wanted to deal with

Flexfab it would have to order goods from Flexfab through C&S. *See* DeCamp Affidavit, ¶ 16, Exh. A to Plaintiff's Brief in Support of Motion for Summary Judgment; Cook Affidavit, ¶ 17, Exh. B to Plaintiff's Brief in Support of Motion for Summary Judgment; LaJoye Affidavit, ¶ 11, Exh. C to Plaintiff's Brief in Support of Motion for Summary Judgment.

19. Flexfab also told Capital City that it would only agree to manufacture the air ducting hose needed by Capital City and the DSCC if an escrow account was established for its benefit. *See* DeCamp Affidavit, ¶¶ 17, 19, Exh. A to Plaintiff's Brief in Support of Motion for Summary Judgment; Cook Affidavit, ¶ 18, Exh. B to Plaintiff's Brief in Support of Motion for Summary Judgment; LaJoye Affidavit, ¶ 12, Exh. C to Plaintiff's Brief in Support of Motion for Summary Judgment.

20. Mr. Cook of C&S subsequently contacted Flexfab to serve as the subcontractor to Capital City and produce the air ducting hose required by the prime contract between Capital City and the DSCC. *See* DeCamp Affidavit, ¶ 18, Exh. A to Plaintiff's Brief in Support of Motion for Summary Judgment; Cook Affidavit, ¶ 19, Exh. B to Plaintiff's Brief in Support of Motion for Summary Judgment; LaJoye Affidavit, ¶ 11, Exh. C to Plaintiff's Brief in Support of Motion for Summary Judgment.

21. On June 29, 1999, the DSCC awarded contract SP0740-99-C-1004 to Capital City. *See* Exh. E to Plaintiff's Brief in Support of Motion for Summary Judgment.

22. At the time that the DSCC entered into the June 29, 1999 contract, the DSCC knew that Flexfab was the manufacturer of the air ducting hose that Capital City had agreed to distribute to the DSCC. *See* Luich Dep., p. 13, lns 19-25; p. 14 lns 1-6; p.

15, lns 21-25; p. 28, lns 5-10; p. 43 lns 1-13; p. 50, lns 3-6, Exh. D to Plaintiff's Brief in Support of Motion for Summary Judgment (stating that the DSCC knew that Flexfab was the manufacturer for Capital City by the time that Capital City submitted their proposal or quote to the DSCC, a date prior to the June 1999, contract). *See* Jeffries Dep., p. 70 lns 5-12, Exh. F to Plaintiff's Brief in Support of Motion for Summary Judgment (stating that the fact that inspection occurred at Flexfab is a clear indication that Flexfab was the manufacturer of the product).

23. The DSCC’s knowledge of Flexfab’s involvement in the potential contract predated the execution of the contract by at least three months. *See* Luich Dep., p. 50, lns 3-6, Exh. D to Plaintiff's Brief in Support of Motion for Summary Judgment (stating that by at least March 26, 1999, the DSCC knew that Flexfab would be the manufacturer of the air ducting hose distributed by Capital City).

24. Prior to the June 29, 1999, contract the DSCC dealt with Flexfab as both an 8(A) supplier and as a direct supplier to the government. *See* Taylor Dep. p. 19, lns 3-16, Exh. H to Plaintiff's Brief in Support of Motion for Summary Judgment.

25. The DSCC knew that Flexfab was located in Michigan prior to the June 29, 1999, contract or the events of this case. *See* Taylor Dep. p. 19, lns 14-23, Exh. H to Plaintiff's Brief in Support of Motion for Summary Judgment.

26. Prior to its contact with Capital City, the DSCC had previously worked with C&S as an 8(A) supplier. *See* Taylor Dep., p. 27, lns 8-13, Exh. H to Plaintiff's Brief in Support of Motion for Summary Judgment.

27. Prior to the June 29, 1999, contract the DSCC had also dealt with Flexfab as a manufacturer to C&S. *See* Taylor Dep., p. 27, lns 8-13, Exh. H to Plaintiff's Brief in Support of Motion for Summary Judgment.

28. The DSCC knew that Capital City, prior to its involvement with Flexfab, had a history of payment problems. *See* Taylor Dep., p. 41, lns 19-24 – p. 42 lns 1-7; p. 5-24, p. 46, lns 1-9, Exh. H to Plaintiff's Brief in Support of Motion for Summary Judgment; Spratt Dep., p. 33, lns 18-21, Exh. I to Plaintiff's Brief in Support of Motion for Summary Judgment.

29. The DSCC knew of Flexfab's desire to have an escrow account set up in connection with its prime contract with Capital City. *See* Taylor Dep., p. 41, lns 6-18, Exh. H to Plaintiff's Brief in Support of Motion for Summary Judgment.

30. Upon learning of Capital City's payment problems, the DSCC contacted Capital City and discussed setting up an escrow to ensure that the manufacturer of the product required by the government, received proper payment. *See* Taylor Dep., p. 45 lns 1-24 – p. 46 lns 1-9; p. 47 lns 16-24- p. 48 lns 1-10; p. 50 lns 8-23, Exh. H to Plaintiff's Brief in Support of Motion for Summary Judgment (stating that he talked with Capital City about the idea of using an escrow account to avoid the problem of the government paying Capital City and Capital City not paying the producer of the product).

31. The DSCC was interested in ensuring that the manufacturer of the product to Capital City received proper payment because it wanted the product. *See* Taylor Dep., p. 45 lns 1-24 – p. 46 lns 1-9; p. 47 lns 16-24- p. 48 lns 1-10; p. 50 lns 8-23, Exh. H to Plaintiff's Brief in Support of Motion for Summary Judgment (stating that the DSCC

contacted Capital City "to determine what options were available to them. And, of course, we wanted our –the agency wanted the material").

32. Capital City agreed to the establishment of an escrow account. *See* Taylor Dep., p. 50 lns 8-24 –p. 51, ln 1, Exh. H to to Plaintiff's Brief in Support of Motion for Summary Judgment.

33. The DSCC knew that the escrow account in this case was established to ensure that the manufacturer received payment. *See* Taylor Dep., p. 41, lns 6-18, Exh. H to Plaintiff's Brief in Support of Motion for Summary Judgment.

34. The June 29, 1999, contract both identified Flexfab as the manufacturer of the air ducting hose required pursuant to DSCC's prime contract with Capital City and also specifically directed the DSCC's payment to the escrow account controlled by Flexfab. *See* Luich Dep., p. 17, lns 14-25 – p. 19 lns 1-3; p. 24, lns 11-13; p. 28, lns 5-10, Exh. D to Plaintiff's Brief in Support of Motion for Summary Judgment (referencing page twelve of the June 29, 1999, contract, Exh. E to Plaintiff's Brief in Support of Motion for Summary Judgment, as properly indicating Flexfab as the manufacturer of the air ducting hose and directing the DSCC's payment to the escrow account located in Grand Rapids, Michigan). *See* Jeffries Dep., p. 28, lns 1-8, Exh. F to Plaintiff's Brief in Support of Motion for Summary Judgment (clarifying that page twelve of the June 29, 1999, contract directs the DSCC's payment to the remittance address at Old Kent Bank located in Grand Rapids, Michigan).

35. Pursuant to the plain language of the June 29, 1999, contract the DSCC was to direct all payments to the escrow account located in Grand Rapids and was not to make any payments directly to Capital City, its 8(A) supplier. *See id.*

36. Flexfab and the DSCC set up the escrow account to ensure that Flexfab would receive proper payment and that the DSCC would receive the goods that it desired from Flexfab. *See* Taylor Dep., p. 45, lns 1-24 – p. 46, lns 1-9; p. 47, lns 16-24- p. 48, lns 1-10; p. 50, lns 8-23, Exh. H to Plaintiff's Brief in Support of Motion for Summary Judgment (stating that he talked with Capital City about the idea of using an escrow account to avoid the problem of the government paying Capital City and Capital City not paying the producer of the product). *See* Taylor Dep., p. 45, lns 1-24 – p. 46, lns 1-9; p. 47, lns 16-24- p. 48, lns 1-10; p. 50 lns 8-23, Exh H to Plaintiff's Brief in Support of Motion for Summary Judgment (stating that the DSCC contacted Capital City "to determine what options were available to them. And, of course, we wanted our –the agency wanted the material"); *See* Taylor Dep., p. 82, lns 6-24; p. 38, lns 1-2, Exh. H to Plaintiff's Brief in Support of Motion for Summary Judgment (stating that an escrow agreement is for everyone's benefit).

37. Flexfab would not have supplied the air ducting hose required by Capital City and the Government if the parties had not agreed to direct the DSCC's payment directly to the Flexfab controlled escrow account. *See* DeCamp Affidavit, ¶ 25, Exh. A to Plaintiff's Brief in Support of Motion for Summary Judgment; *See* LaJoye Affidavit, ¶ 18, Exh. C to Plaintiff's Brief in Support of Motion for Summary Judgment.

38. On September 27, 1999, a contracting officer for the DSCC executed modified contract P00001. *See* Jeffries Dep., p. 15, lns 14-19, Exh. F to Plaintiff's Brief in Support of Motion for Summary Judgment.

39. The September 27, 1999, Modified contract P00001 is Exh. G to Plaintiff's Brief in Support of Motion for Summary Judgment.

40. Modified contract P00001 directed the DSCC to remit payment to Old Kent Bank, Corporate Trust, in Grand Rapids, Michigan. *See* Jeffries Dep., p. 21, lns 3-17; p. 22, lns 9-13, Exh. F to Plaintiff's Brief in Support of Motion for Summary Judgment (identifying deposition exhibit 4, Exh. G to Plaintiff's Brief in Support of Motion for Summary Judgment, as the modification that she signed which directs payment to the escrow account located in Grand Rapids); *See* Spratt Dep. p. 57, lns 10-12; p. 78, lns 1-6; Exh. I to Plaintiff's Brief in Support of Motion for Summary Judgment.

41. Although the parties executed the modification, the original June 29, 1999, contract correctly identified Flexfab as the manufacturer of the air ducting hose and correctly directed payment to the escrow account located in Grand Rapids, Michigan. *See* Luich Dep., p. 17, lns 14-25 – p. 19 lns 1-3; p. 24, lns 11-13, p. 28, lns 5-10; p. 43 lns 1-13, Exh. D to Plaintiff's Brief in Support of Motion for Summary Judgment (stating that page twelve of the June 29, 1999, contract provides that Flexfab is the manufacturer of the product and that payment is to be made into an escrow account located in Grand Rapids, Michigan). *See* Spratt Deposition, pp. 78-80, Exh. I to Plaintiff's Brief in Support of Motion for Summary Judgment (stating that the June 29, 1999, contract attached hereto at Tab 1 is ambiguous in that it contains two remittance addresses; one remittance address is identified as Capital City Pipes, P.O. Box 12368, Tallahassee, Florida, and the other was identified as Old Kent Bank in Michigan). *See* Jeffries Dep., p. 28, lns 1-8, Exh. F to Plaintiff's Brief in Support of Motion for Summary Judgment (clarifying that page twelve of the June 29, 1999, contract directs the DSCC's payment to the remittance address at Old Kent Bank located in Grand Rapids, Michigan).

42. Due to the June 29, 1999, contract the September 1999, modification was actually unnecessary. *See id.*

43. The DSCC is responsible for determining that a contract modification is implemented. *See* Spratt Dep., p. 61, lns 13-16, Exh. I to Plaintiff's Brief in Support of Motion for Summary Judgment.

44. After a modification, the DSCC should follow up to ensure that the modification actually takes place and is correctly entered into the DSCC's system. *See* Spratt Deposition, pp. 62, lns 22-24 – 64, lns 1-13, Exh I to Plaintiff's Brief in Support of Motion for Summary Judgment (stating that DSCC operators are trained to verify contract modifications).

45. On approximately January of 2000, Howard Crockett, an agent of the DSCC employed at the time as an inventory manager supporting supplies to the military services, requested that Flexfab expedite the delivery of the air duct to the government due to an urgent need by the United States Air Force. *See* Crockett Dep., p. 8, lns 5-8; pp. 9-10; p. 13, lns 7-18; p. 15, lns 15-20, Exh. L to Plaintiff's Brief in Support of Motion for Summary Judgment.

46. Mr. Crokett made the request for expedited delivery by contacting Flexfab directly and by informing Thelma Williams of Capital City of the request. *See* Crockett Dep, pp. 9-10; p. 13, lns 7-18, Exh. L to Plaintiff's Brief in Support of Motion for Summary Judgment (stating that he "did call Flexfab in order to see if they could expedite on getting parts to Capital City").

47. The DSCC's urgent need for the air ducting hose was the result of a demand by the Tinder Air Force Base in Omaha City. The air ducting hose supplied by

Flexfab provided coolant to the aircraft and without the hose the Tinder Air Force Base would have been unable to perform any work on the aircraft. *See* Crockett Dep, p. 9, lns 16-25; p. 10, lns 1-4; p. 15, lns 12-24; p. 17, lns 4-7, Exh. L to Plaintiff's Brief in Support of Motion for Summary Judgment.

48. Prior to Flexfab's shipment of the air ducting hose to the DSCC, a government agent inspected the air ducting hose at Flexfab. *See* Jeffries Dep., pp. 53, lns 12-24 – 57, Exh. F to Plaintiff's Brief in Support of Motion for Summary Judgment.

49. A government agent accepted the air ducting supplied and delivered by Flexfab. *See* Spratt Deposition, p. 26, lns 9-17, Exh. I to Plaintiff's Brief in Support of Motion for Summary Judgment (stating that she verified that Capital City's contractor, Flexfab provided the air ducting hose to the government).

50. Subsequent to receiving the air ducting hose from Flexfab, the DSCC remitted payment to Capital City and not to the escrow account identified in the June 29, 1999, contract or the September 27, 1999, modification. *See* Spratt Deposition, p. 59, lns 9-24; p. 60 lns 14-17; p. 81 lns 1-12, Exh. I to Plaintiff's Brief in Support of Motion for Summary Judgment. *See* Taylor Dep., pp. 58, lns 22-24- 59, lns 1-3, Exh. H to Plaintiff's Brief in Support of Motion for Summary Judgment (stating that the DSCC made payments directly to Capital City and not to the escrow account as stated in the modification). *See* Taylor Dep., p. 83, lns 2-24, Exh. H to Plaintiff's Brief in Support of Motion for Summary Judgment (stating that "a breakdown in the system" is likely what lead to the incorrect remittance of payment to Capital City). *See* Spratt Deposition, p. 59, lns 9-24; p. 60, lns 14-17; p. 81, lns 1-12, Exh. I to Plaintiff's Brief in Support of Motion for Summary Judgment. *See* Taylor Dep., pp. 58, lns 22-24- 59, lns 1-3, Exh. H to

Plaintiff's Brief in Support of Motion for Summary Judgment (stating that the DSCC made payments directly to Capital City and not to the escrow account as stated in the modification).

51. Howard Griffin, in his authority as the Associate Director of the Small and Disadvantaged Business, attended a meeting with Mr. Henry Cook of C&S, and Mr. Phil Kover and Michael Taylor of the DSCC, to discuss Flexfab's failure to get paid for the air ducting hose that it manufactured and delivered to the DSCC. *See* Griffin Dep., p. 26, lns 4-24; p. 27, lns 1-9, Exh. K to Plaintiff's Brief in Support of Motion for Summary Judgment; *see also* Spratt Dep., p. 96, lns 1-13, Exh. I to Plaintiff's Brief in Support of Motion for Summary Judgment (stating that she had knowledge of a meeting that occurred between Mr. Crocket of the DSCC, Mr. Griffin of the DSCC, Mr. Taylor of the DSCC and Mr. Cook of C&S). *See* Taylor Dep., p. 57, lns 1-13, Exh. H to Plaintiff's Brief in Support of Motion for Summary Judgment (stating that he attending a meeting with Henry Cook, Howard Griffin and Phil Kover).

52. The DSCC, after its failure to direct payment into the escrow account as required by the June 29, 1999 contract and September 27, 1999 modification, engaged in efforts to ensure Flexfab received payment. *See* Griffin Dep., pp. 26-28, Exh. K to Plaintiff's Brief in Support of Motion for Summary Judgment (stating that he was involved in conversations with Henry Cook of C&S and Phil Kover of the DSCC to "get[] these people paid.") *See* Taylor Dep., p. 62 lns 16-24; p. 63 lns 1-12, Exh. H to Plaintiff's Brief in Support of Motion for Summary Judgment (stating that upon learning that the DSCC had improperly remitted payment to Capital City that the DSCC instructed

the DFAS to correct the problem and direct payment into the escrow account located in Grand Rapids, Michigan).

53. The Government erroneously and incorrectly directed payment for air ducting hose to Capital City in the amount of $452,031.60. *See* DeCamp Affidavit, Exh. A, ¶ 28 to Plaintiff's Brief in Support of Motion for Summary Judgment.

54. The document identified as Statement of Account dated March 11, 2000, attached at Tab 2 of the DeCamp Affidavit, Exh. A to Plaintiff's Brief in Support of Motion for Summary Judgment, identifies the invoice number, invoice date and invoice amount for the shipments made by Flexfab to the Government. Pursuant to the parties' contract, Flexfab shipped air ducting hose directly to the Government on approximately February 22, 2000, February 29, 2000, March 7, 2000 and March 14, 2000. Flexfab shipped goods in the amount of $452,031.60 to the Government. *See* DeCamp Affidavit, ¶ 26, Exh. A to Plaintiff's Brief in Support of Motion for Summary Judgment.

55. Flexfab, in an attempt to collect the amount due, contacted Capital City but to date has been unsuccessful in recovering the amount due. *See* DeCamp Affidavit, ¶ 29, Exh. A to Plaintiff's Brief in Support of Motion for Summary Judgment.

56. Upon information and belief, Capital City is currently seeking protection from its creditors through bankruptcy. *See* DeCamp Affidavit, ¶ 30, Exh. A to Plaintiff's Brief in Support of Motion for Summary Judgment.

VARNUM, RIDDERING, SCHMIDT & HOWLETT LLP

Date: March 22, 2004 By: /s/ Perrin Rynders

Perrin Rynders (P38221)
Mark E. Hills (P47524)
Business Address & Telephone:
Bridgewater Place/P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000