**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **FLEXFAB, L.L.C.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No 02-1096C |
| v. | ) | (Judge Block) |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO**
**DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56(h)(2) of the Rules of the United States Court of Federal Claims Plaintiff, Flexfab, LLC, respectfully submits the following Response to Defendant's Proposed Findings of Uncontroverted Fact.

1. Flexfab, L.L.C. ("Flexfab") is a Michigan limited liability company that designs, among other things, air duct hose. Complaint. ("Compl.") ¶¶ 1, 2.

**ANSWER:** Admit.

2. Capital City Pipes, Inc. ("Capital City") is a Florida corporation that supplies, among other things, air duct hose. Compl. ¶¶ 12, 13.

**ANSWER:** Admit.

3. Capital City was approached by the Defense Logistics Agency, Defense Supply Center Columbus ("DSCC"), small business specialist, Michael Taylor, to provide the duct hose at issue in this contract as a supplier in the Government's "8A" program for disadvantaged and minority contractors. A91.

**<u>ANSWER</u>:** Incomplete. While the DSCC did approach Capital City, the DSCC only did so after Michael Taylor contacted Henry Cook of C&S for the name of an 8(A) contractor. Mr. Cook gave Mr. Taylor the name of Capital City and several other 8(A) contractors as possible prime contractors. Cook Affidavit, Exh. B, ¶ 12 (App-22).[1] Taylor Dep., pp. 24-27, Exh. H (APP-100-APP-101).

4. The DSCC small business specialist is separate from the Small Business Administration, which is a distinct agency, unrelated to DSCC. A90.

**<u>ANSWER</u>:** Admitted that the DSCC is a separate agency from the Small Business Administration ("SBA"). Denied that the DSCC and the SBA are unrelated entities. In further response, Mr. Taylor testified that as a Small Business Administration agent that he was an employee of the DSCC. Taylor Dep., pp. 9-15, Exh. H (APP-97-APP-98).

5. The DSCC director of small business requested approval from the SBA to use Capital City as the provider for duct hose. Al (DF175). The SBA approved Capital City as a qualified 8A provider. A2-3.

**<u>ANSWER</u>:** The statements contained in paragraph 5 of Defendant's Proposed Findings of Uncontroverted Fact ("Defendant's Statement") are admitted. As to the contents of the documents contained at A2-3 of Defendant's Appendix, since the Defendant's agents did not testify as to the contents of the referenced documents, the documents speak for themselves and no further answer is required.

6. Capital City worked with a subcontractor C&S Industrial Supply Company ("C&S"). Cook Aff. at ¶ 6, Exh. B (APP-21).

---

[1] APP-__ refers to the pages of the appendix filed with Plaintiff's Brief in Support of Motion for Summary Judgment.

**ANSWER:** Incomplete. Flexfab admits that Capital City worked with C&S and C&S subcontracted work with Flexfab. However, there is a substantial amount of information notably absent from Defendant's statement. Such omitted information misstates the relationship between the DSCC, Capital City, C&S, and Flexfab. For example, the evidence indicates that C&S was only involved due to their prior relationship with Flexfab and that their involvement was limited to facilitating communications between the DSCC, Flexfab, and Capital City. Flexfab's Proposed Findings of Uncontroverted Facts ¶¶ 17, 18;[2] *See* DeCamp Affidavit, Exh. A, ¶¶ 15, 16 (APP-6); Cook Affidavit, Exh. B, ¶ 17 (APP-23); LaJoye Affidavit, Exh. C, ¶ 11 (APP-30). Defendant's statement, on the other hand, appears to suggest that Flexfab was a third tier contractor who was separate and isolated from the prime contract between the DSCC and Capital City. The evidence demonstrates that such was not the case. For example, Defendant was clearly aware of Flexfab's role in the DSCC's prime contract with Capital City. For example, while Capital City did work with C&S, Capital City only did so in order to work with Flexfab. As indicated in paragraphs 16-20 of Flexfab's Proposed Findings of Uncontroverted Facts, the following events occurred:

a. Capital City approached Flexfab to manufacturer the product that Capital City was to provide to the Government. *See* Flexfab's Proposed Findings of Uncontroverted Facts ¶ 16. *See also* DeCamp Affidavit, Exh. A, ¶ 14 (APP-6); Cook Affidavit, Exh. B, ¶ 13 (APP-22); LaJoye Affidavit, Exh. C, ¶ 10 (APP-30).

b. Since Flexfab had never worked with Capital City and had previously decided to not take on any new 8(A) customers, Flexfab refused to enter into a direct

[2] Flexfab's Proposed Findings of Uncontroverted Facts was filed with Flexfab's Brief in Support of Motion for Summary Judgment on March 22, 2004. Flexfab's Proposed Findings of Uncontroverted Facts is specifically supported by deposition testimony of Defendant's agents, deposition exhibits, and affidavits.

contract with Capital City. *See* Flexfab's Proposed Findings of Uncontroverted Facts ¶ 17. *See also* DeCamp Affidavit, ¶ 15, Exh. A to Plaintiff's Brief in Support of Motion for Summary Judgment (APP-6); Cook Affidavit, Exh. B, ¶ 17 (APP-23). *See also* DeCamp Affidavit, Exh. A, ¶ 16 (APP-6); Cook Affidavit, Exh. B, ¶ 17 (APP-23); LaJoye Affidavit, Exh. C, ¶ 11 (APP-30).

c. Flexfab told Capital City that C&S was its minority supplier, that it was not taking on any new 8(A) customers, and that if Capital City wanted to deal with Flexfab it would have to order goods from Flexfab through C&S. *See* Flexfab's Proposed Findings of Uncontroverted Facts ¶ 18. *See* DeCamp Affidavit, Exh. A, ¶ 16 (APP-6); Cook Affidavit, Exh. B, ¶ 17 (APP-23); LaJoye Affidavit, Exh. C, ¶ 11 (APP-30).

d. Flexfab also told Capital City that it would only agree to manufacture the air ducting hose needed by Capital City and the DSCC if an escrow account was established for its benefit. *See* Flexfab's Proposed Findings of Uncontroverted Facts ¶ 19. *See also* DeCamp Affidavit, Exh. A, ¶¶ 17, 19 (APP-6); Cook Affidavit, Exh. B, ¶ 18 (APP-23); LaJoye Affidavit, Exh. C, ¶ 12 (APP-30).

e. Mr. Cook of C&S subsequently contacted Flexfab to serve as the subcontractor to Capital City and produce the air ducting hose required by the prime contract between Capital City and the DSCC. *See* Flexfab's Proposed Findings of Uncontroverted Facts ¶ 20. *See also* DeCamp Affidavit, Exh. A, ¶ 18 (APP-6); Cook Affidavit, Exh. B, ¶ 19 (APP-23); LaJoye Affidavit, Exh. C, ¶ 11 (APP-30).

Similarly, the evidence demonstrates that the DSCC worked directly with Flexfab for purposes of obtaining the air ducting hose. *See* Flexfab's Proposed Findings of Uncontroverted Facts, ¶¶ 45-49 (demonstrating that the DSCC contacted Flexfab directly and requested that

Flexfab expedite delivery of the air ducting hose and that the DSCC inspected and accepted the air ducting hose at Flexfab's facility prior to delivery.) *See also* Crockett Dep., p. 8, lns 5-8; pp. 9-10; p. 13, lns 7-18; p. 15, lns 15-20, Exh. L (APP-127); Jeffries Dep., p. 53, lns 12-24 – p. 57, attached to Flexfab's Response Brief at Tab 1; Spratt Dep., p. 26, lns 9-17, attached to Flexfab's Response Brief at Tab 3.

Contrary to Defendant's Statement, Flexfab cannot be categorized as an isolated entity separate and distinct from the DSCC.

7. In turn C&S subcontracted work to Flexfab. Cook Aff. at ¶¶ 7-8, Exh. B (APP-21).

**ANSWER:** *See* Flexfab's Response at ¶ 6, *supra*.

8. In spring 1999 DSCC offered a restricted 8A solicitation to Capital City. A5. Capital City offered Flexfab as its distributor. A17.

**ANSWER:** Flexfab admits that the DSCC offered Capital City an 8(A) solicitation in 1999 and that the DCSS was aware that Flexfab was the distributor of the product. The remainder of the allegation is neither admitted nor denied as Flexfab is without knowledge of information sufficient to form a belief as to its truth. In further response, the DSCC's knowledge of Flexfab's involvement is clear and predated the execution of the contract by at least three months. *See* Flexfab's Proposed Findings of Uncontroverted Facts ¶¶ 22, 23. *See also* Luich Dep., p. 13, lns 19-25; p. 14, lns 1-6; p. 15, lns 21-25; p. 28, lns 5-10; p. 43, lns 1-13; p. 50, lns 3-6, Exh. D (APP-40); Jeffries Dep., p. 70 lns 5-12, Exh. F (APP-91).

9. The pre-award contracting officer did not communicate with Flexfab, C&S, or Capital City, regarding an escrow agreement between Flexfab and Capital City. A89.

**ANSWER:** Denied. In further response, in addition to Defendant's improper reliance on A89, the evidence clearly contradicts the DSCC's statement and demonstrates that the Pre-award Contracting Specialist participated in direct communications regarding the escrow agreement and subsequently incorporated its agreement to remit payment to the escrow account located in Grand Rapids, Michigan into the original June 29, 1999, Contract.

For example, on June 23, 1999, Thelma Williams of Capital City sent a letter to the Pre-award Contracting Specialist, Ms. Anita Luich. *See* Flexfab's Exh. E (APP-58). The June 23, 1999, letter identified Flexfab as the manufacturer of the product and specifically requested that the remittance address of the contract be identified as the escrow account located in Grand Rapids, Michigan. *See* Luich Dep. p. 17, lns 14-25 – p. 19, lns 1-3; p. 24, lns 11-13; p. 28, lns 5-10, Exh. D (APP-41) (identifying page twelve of the June 29, 1999, Contract (deposition Exhibit 3 – Exh. E (APP-58)) as properly referencing Flexfab as the manufacturer of the air ducting hose and directing the DFAS's payment to the escrow account located in Grand Rapids Michigan). The Pre-award Contracting Specialist, Ms. Luich, subsequently incorporated the June 23, 1999, letter received from Capital City into the prime contract executed on June 29, 1999. *See* Flexfab's Proposed Findings of Uncontroverted Facts ¶ 34. *See also* Jeffries Dep., p. 28, lns 1-8, Exh. F (APP-90).

Further, in addition to Ms. Luich, other agents of the Defendant also engaged in communications with Flexfab, C&S, and Capital City regarding the escrow agreement. In fact, agents of the Defendant specifically facilitated the establishment of the escrow to ensure the DSCC's receipt of the air ducting hose. For example, the evidence demonstrates that:

a. The DSCC knew that Capital City, prior to its involvement with Flexfab, had a history of payment problems. *See* Flexfab's Proposed Findings of Uncontroverted

Facts ¶ 28. *See also* Taylor Dep., pp. 5-24; p. 41, lns 19-24 – p. 42 lns 1-7; p. 46, lns 1-9, Exh. H (APP-96); Spratt Dep., p. 33, lns 18-21, Exh. I (APP-111).

b. The DSCC knew of Flexfab's desire to have an escrow account set up in connection with its prime contract with Capital City. *See* Flexfab's Proposed Findings of Uncontroverted Facts ¶ 29. *See also* Taylor Dep., p. 41, lns 6-18, Exh. H (APP-103).

c. Upon learning of Capital City's payment problems, the DSCC contacted Capital City and discussed setting up an escrow to ensure that the manufacturer of the product required by the government received proper payment. *See* Flexfab's Proposed Findings of Uncontroverted Facts ¶ 30. *See also* Taylor Dep., p. 45, lns 1-24 – p. 46 lns 1-9; p. 47, lns 16-24 – p. 48, lns 1-10; p. 50, lns 8-23, Exh. H (APP-104).

d. The DSCC was interested in ensuring that the manufacturer of the product to Capital City received proper payment because it wanted the product. *See* Flexfab's Proposed Findings of Uncontroverted Facts ¶ 31. *See also* Taylor Dep., p. 45, lns 1-24 – p. 46, lns 1-9; p. 47, lns 16-24 – p. 48, lns 1-10; p. 50, lns 8-23, Exh. H (APP-104).

e. Capital City agreed to the establishment of an escrow account. *See* Flexfab's Proposed Findings of Uncontroverted Facts ¶ 32. *See also* Taylor Dep., p. 50, lns 8-24 – p. 51, ln 1, Exh. H (APP-105).

f. The DSCC knew that the escrow account in this case was established to ensure that the manufacturer received payment. *See* Flexfab's Proposed Findings of Uncontroverted Facts ¶ 33. *See also* Taylor Dep., p. 41, lns 6-18, Exh. H (APP-103).

10. The Pre-award Contracting Officer awarded Contract No. SPO740-99-C-1004 to Capital City Pipes on June 29, 1999. A6 (contract).

**ANSWER:** Admitted. In further response, the June 29, 1999, Contract in this matter is comprised of the documents identified at Flexfab's APP-47 through APP-84, Exh. E to Plaintiff's Brief in Support of Motion for Summary Judgment. *See* Luich Dep. pp. 10-28, Exh. D (APP-39).

11. The contract incorporates FAR 52232-33 "Mandatory Information For Electronic Funds Transfer Payments." A34.

**ANSWER:** This allegation is neither admitted nor denied as the document speaks for itself and no further answer is required. In further response, in all of the depositions of the Defendant's agents, not one of them ever referenced the provision identified by Defendant's counsel as having any affect on the obligation of the DSCC to remit payment to the escrow account located in Grand Rapids, Michigan. Similarly, this is the first time that counsel for the Defendant has relied upon such a "defense." Instead, the Defendant's agents agreed that the contract required the DSCC to remit payment to the account located in Grand Rapids, Michigan. *See* Flexfab's Proposed Findings of Uncontroverted Facts ¶¶ 34, 35, 40, 41. *See also* Jeffries Dep., p. 21, lns 3-17; p. 22, lns 9-13; p. 28, lns 1-8, Exh. F (APP-89); *See* Spratt Dep. p. 57, lns 10-12; p. 78, lns 1-6, Exh. I (APP-112); *See* Luich Dep., p. 17, lns 14-25 – p. 19 lns 1-3; p. 24, lns 11-13; p. 28, lns 5-10; p. 43, lns 1-13, Exh. D (APP-41).

12. [Omitted in Defendant's Proposed Findings of Fact.]

13. The contract in its original form stated that the remittance address for payment be "Capital City Pipes, Inc., PO Box 12368, Tallahassee, FL." Al3.

**ANSWER:** Denied. While the Contract generally references the address of Capital City Pipes, the specific language of the June 29, 1999, Contract identifies Flexfab as the manufacturer of the air ducting hose and identifies the remittance address as the escrow account located in Grand

Rapids, Michigan. *See* Spratt Dep., pp. 78-80, Exh. I (APP-113). The deposition testimony of Ms. Luich, the Pre-award Contract Specialist, clarifies that the June 29, 1999, Contract required and directed the DFAS to remit payment to the Flexfab controlled escrow account and not to the Capital City address. *See* Luich Dep., p. 17, ln 14 – p. 19, lns 1-3; p. 24, lns 11-13; p. 28, lns 5-10; p. 43, lns 1-13, Exh. D (APP-41) (stating that page twelve of the June 29, 1999, Contract provides that Flexfab is the manufacturer of the product and that payment is to be made into an escrow account located in Grand Rapids Michigan); Luich Dep., p. 24, lns 2-13, Exh. D (APP-42) (stating that page 12 of the contract identifying the remittance address as the account located in Grand Rapids, Michigan, superseded the language at page 8 of the contract generally identifying the address of Capital City Pipes).

14. On June 23, 2002 [sic], Capital City requested by fax letter that the remittance address for the contract be changed to "Capital City Pipes, Inc. C/O ABA #07200052, Old Kent Bank, Corp Trust, P.O. Box 144, Grand Rapids, MI 49501-0144." A17.

**ANSWER:** Denied that the June 23, 1999, letter requested that the remittance address for the contract be “changed” to the address located in Grand Rapids, Michigan, as the June 23, 1999, letter, located at page 12 of the June 29, 1999, Contract, was specifically incorporated into the Contract by the Pre-award Contract Specialist. *See* Flexfab’s Proposed Findings of Uncontroverted Facts, ¶ 34. *See also* Flexfab’s Response at ¶ 13, *infra*. Even Defendant, at footnote 3 of its Statement, acknowledges that the Pre-award Contract Specialist stated that the June 29, 1999, Contract includes the June 23, 1999, letter directing payment to the account located in Grand Rapids, Michigan. *See* Defendant's Statement, p. 3, Fn. 3. *See also* Luich Dep., p. 17, lns 14-25 – p. 19, lns 1-3; p. 24, lns 11-13; p. 28, lns 5-10, Exh. D (APP-41); Jeffries Dep., p. 28, lns 1-8, Exh. F (APP-90).

15. The signed contract was then sent the Defense Finance and Accounting Service ("DFAS") pursuant to regular DSCC practice. A86.

**ANSWER:** Admitted, based upon the deposition testimony of agents for the Defendant.

16. DFAS is responsible for payment to contractors. A53-64, A87, A77.

**ANSWER:** Admitted, based upon the deposition testimony of agents for the Defendant. In further response, the remittance of payment from the DFAS does not change or alter the contractual obligations of the DSCC.

17. By letter dated July 1, 1999, Capital City requested that DSCC issue an amendment to the contract, changing the remittance address to "Capital City Pipes, Inc., C/O ABA # 07200052, Old Kent Bank Corp Trust, P.O. Box 144, Grand Rapids, MI 49501-0144." A44. This letter also requested that the contract be amended to adjust the place of performance, shipping, and inspection to "FlexFab Division, 8143 Gun Lake Road, Hastings, MI." Id.

**ANSWER:** Denied that the July 1, 1999, letter "changed" the remittance address to Capital City Pipes, Inc., C/O ABA # 0720052 Old Kent Bank Corp Trust, P.O. Box 144, Grand Rapids, MI 49501-0144. As to the remainder of the allegation, the document speaks for itself and no further answer is required.

In further response, the deposition testimony of Ms. Luich, the Pre-award Contract Specialist, demonstrates that the June 29, 1999, Contract correctly identified the remittance address as the escrow account located in Grand Rapids, Michigan. *See* Flexfab's Response at ¶¶ 13, 14, *infra.* As a result, the September 1999 Modification or Amendment was actually unnecessary and did not "change the remittance address". *See id;* Flexfab's Proposed Findings of Fact, ¶ 41. *See also* Spratt Dep., pp. 78-80, Exh. I, (APP-113); LaJoye Affidavit, Exh. C, ¶ 16, (APP-31). Similarly, Defendant, at footnote 3 of its Statement, acknowledges that the Pre-award

Contract Specialist stated that the June 29, 1999, Contract includes the June 23, 1999, letter directing payment to the account located in Grand Rapids, Michigan. *See* Defendant's Statement, p. 3, Fn. 3. *See also* Luich Dep., p. 17, lns 14-25 – p. 19, lns 1-3; p. 24, lns 11-13; p. 28, lns 5-10; p. 43, lns 1-13, Exh. D (APP-41); Spratt Dep., pp. 78-80, Exh. I (APP-113); Jeffries Dep., p. 28, lns 1-8, Exh. F (APP-90).

18. On September 27, 1999, the post-award contracting officer, Melinda Jeffries, issued amendment P00001 to the solicitation. A45. This amendment changed the remittance address to: "Old Kent Bank, Corp Trust, P.O. Box 144, Grand Rapids, MI 49501-0144." Id.

**ANSWER:** Admitted that on September 27, 1999, the Post-award Contracting Specialist, Melinda Jeffries, issued Amendment P00001 to the solicitation. Denied that the Amendment changed the remittance address to Old Kent Bank Corp Trust, P.O. Box 144, Grand Rapids, MI 49501-0144, as the original June 29, 1999, Contract correctly identified this address as the remittance address. *See* Flexfab's Response to Defendant's Proposed Findings of Fact at ¶¶ 13, 17*, infra.*

19. The post-award contracting officer who issued the amendment, Melinda Jeffries, did not have any knowledge of why the amendment was requested. A78A. Ms. Jeffries did not have any contact with C&S or Flexfab. A79.

**ANSWER:** Admitted that the Post-award Contracting Specialist, Ms. Jeffries, testified that she did not have any knowledge as to why the Amendment was issued. In further response, such lack of knowledge is irrelevant in light of the fact that Ms. Jeffries also testified that she was unable to recall the product that was being purchased or preparing the Modification. *See* Jeffries Dep., pp. 57-59, Defendant's A78A. Nonetheless, the DSCC does not dispute that the September 27, 1999, Modification was in fact executed. *See* Defendant's Proposed Findings of

Uncontroverted Facts, ¶ 18. As a result, the Post-award Contractor's knowledge of the reasons behind the Modification is irrelevant for purposes of this dispute.

As to whether Ms. Jeffries had any contact with C&S or Flexfab, this allegation is neither admitted nor denied as Flexfab is without knowledge of information sufficient to form a belief as to its truth and Defendant failed to depose any witnesses on this issue.

20. Flexfab was not identified as a joint payee and Capital City did not indicate an intent to assign its right to payment to Flexfab. A45.

**ANSWER:** Admitted.

21. Capital City never changed the remittance address in the Central Contractor Registration ("CCR"). Only the prime contractor can submit a change to the CCR pursuant to regulation. A34 (incorporating FAR 52232-33).

**ANSWER:** The first sentence of the allegation is neither admitted nor denied as Flexfab is without knowledge of information sufficient to form a belief as to its truth. In further response, during the depositions of Defendant's agents not one of them indicated that information contained in the Central Contractor Registration had any affect, whatsoever, on the DSCC's duty to remit payment to the account identified in both the original Contract and the Modification. The second sentence of the allegation calls for a legal conclusion to which no answer is required. In further response, the Defendant's agents admitted that the DFAS improperly remitted payment to Capital City and took actions to rectify the Defendant's error and properly remit payment to Flexfab's account. *See* Griffin Dep., pp. 26-28, Exh. K (APP-122); Taylor Dep., p. 62, lns 16-24; p. 63, lns 1-12, Exh. H (APP-107).

22. On February 22, February 29, March 7, and March 14, 2000 DSCC accepted delivery of duct hose from Flexfab. A46-52.

**ANSWER:** Admitted.

23. From March 28, 2000 through April 20, 2000, DSCC remitted full payment for each delivery to Capital City. A53-64. In remitting payment DFAS used the original address provided by Capital City and did not use the address reflected in the amendment. Id.; A67.

**ANSWER:** Admitted that on March 28, 2000, through April 20, 2000, the DSCC remitted full payment for each delivery of air ducting hose made by Flexfab to Capital City. Denied that the DFAS used the original address in the June 29, 1999, Contract as the testimony of the Pre-award Contract Specialist demonstrates that the original June 29, 1999, Contract correctly identified the account located in Grand Rapids, Michigan and not the address of Capital City, as the correct remittance address. *See* Flexfab's Response at ¶¶ 13, 17, 18, *infra*. Admitted that the DFAS did not remit payment to the account located in Grand Rapids, Michigan, as identified in either the June 29, 1999, original Contract or the September 27, 1999, Modification.

24. After the modification was processed Mr. Taylor, his superior Howard Griffen, and members of DFAS met with a C&S representative Henry Cook. A93, A66.

**ANSWER:** Admitted.

25. During this meeting, C&S indicated that Capital City had not paid Flexfab. C&S also indicated that Capital City had not paid another subcontractor pursuant to another contract. A93.

**ANSWER:** Denied. The last three paragraphs of Defendant's Statement[3] appear to infer that prior to the filing of Flexfab's claim, the DSCC was unaware that it had improperly remitted payment to Capital City in contravention of both the original June 29, 1999, Contact and the

[3] Flexfab is unable to identify the paragraphs of Defendant's Statement by number due to multiple numbering mistakes contained in the Statement.

Modification. Contrary to Defendant's implication, the evidence demonstrates that, after the DFAS improperly remitted payment to Capital City, agents of the Defendant acknowledged the error and attempted to correct the error. *See* Flexfab's Proposed Findings of Fact, ¶¶ 51-52. *See also* Griffin Dep., p. 26, lns 4-24; p. 27, lns 1-9; p. 28, Exh. K (APP-122); Spratt Dep., p. 96, lns 1-13, Exh. I (APP-116); Taylor Dep., p. 57, lns 1-13; p. 62, lns 16-24; p. 63, lns 1-12, Exh. H (APP-106).

Moreover, the original Contract and the Modification required the DFAS to remit payment to the escrow located in Grand Rapids, Michigan. *See id.* As a result, the purpose of the meeting referenced in paragraph 25 of Defendant's statement was not to discuss the failure of *Capital City* to pay Flexfab but instead to correct the failure of the DFAS and the DSCC to remit payment to Flexfab as required by the governing Contract. *See id.* While C&S may have discussed payment issues related to another subcontractor with members of DFAS at one time, the purpose of the referenced meeting was to correct the payment error of the DFAS and the DSCC and to undertake efforts to ensure Flexfab received payment for the materials that it manufactured and delivered to the DSCC. *See id.*

26. Capital City never informed DSCC that there had been any payment problems. A74.

**ANSWER:** This allegation is neither admitted nor denied as Flexfab is without knowledge of information sufficient to form a belief as to its truth. *See* Flexfab's Response at ¶ 25, *infra.*

26. [sic] On May 30, 2001, Flexfab submitted a claim to DSCC for $452,031.60. A68. This claim was denied on June 27, 2002. A70. Flexfab filed this lawsuit on August 30, 2002.

**ANSWER:** Admitted. *See* Flexfab's Response at ¶ 25.

27. [sic] Capital City filed for Chapter 7 bankruptcy on December 27, 2000. A97. Its bankruptcy petition is being considered by the United States Bankruptcy Court for the Northern District of Florida, Case No. 00-70953-TLH4.

**ANSWER:** Admitted.

27. [sic] Capital City filed for Chapter 7 bankruptcy on December 27, 2000. A97. Its bankruptcy petition is being considered by the United States Bankruptcy Court for the Northern District of Florida, Case No. 00-70953-TLH4.

**ANSWER:** Admitted.

Respectfully submitted,

VARNUM, RIDDERING, SCHMIDT & HOWLETT LLP
Attorneys for Plaintiff

Date: April __20____, 2004

By: /s/ Perrin Rynders
Perrin Rynders (P38221)
Mark E. Hills (P47524)

Business Address & Telephone:
Bridgewater Place/P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 20th day of April, 2004 the foregoing Plaintiff's Response to Defendant's Proposed Findings of Uncontroverted Facts was filed

electronically with the United States Court of Federal Claims. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system

s/ Perrin Rynders

973493_1.DOC