IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**FLEXFAB, L.L.C.,** a Michigan Limited Liability Company, successor to Flexible Horizons International, Inc., d/b/a Flexfab

Plaintiff,

v.

**UNITED STATES OF AMERICA**,

the Defendant.

Case No. 02-1096 C

Hon. Lawrence J. Block

VARNUM, RIDDERING, SCHMIDT & HOWLETT LLP
Perrin Rynders (P38221)
Mark E. Hills (P47524)
Attorneys for Plaintiff
Bridgewater Place, P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000
(616) 336-7000 – Facsimile

Claudia Burke
Commercial Litigation Branch
Civil Division
United States Department of Justice
Washington DC 20530
Attn: Classification Unit
1100 L Street NW, 8th Floor
(202) 307-0277
(202) 514-8624 – Facsimile

# PLAINTIFF'S RESPONSE TO THE DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS .......... i

TABLE OF AUTHORITIES .......... ii

I. INTRODUCTION .......... 1

II. FLEXFAB'S RESPONSE TO DEFENDANT'S STATEMENT OF FACTS .......... 2

III. ARGUMENT .......... 2

A. Flexfab is an Intended Third-Party Beneficiary of the DSCC's Contracts with Capital City. .......... 2

B. The Defendant's Erroneous Payment to Capital City in Contravention of the Controlling Contract did not Discharge the Defendant's Duty to Pay Flexfab. .......... 13

C. An Electronic Fund Provision Did Not Alter the Defendant's Duty to Remit Payment In Accordance with the Specific Language of the Original Contract and Modification. .......... 14

D. The Course of Dealings Between Flexfab and the DSCC, as Evidenced by the Court of Federal Claims Grant of Summary Judgment in Favor of Flexfab, Evidences the Defendant's Intent to Benefit Flexfab. .......... 17

IV. CONCLUSION .......... 18

# TABLE OF AUTHORITIES

Page

**Cases**

*Hughes v. United States*
58 Fed. Cl. 291, 295 (2003) .......... 14

*Maniere v. United States,*
31 Fed. Cl. 410, 417 (1994) .......... 4

*National Surety Corp. v. United States*
31 Fed. Cl. 565 (1994) .......... 4

*Nielsen-Dillingham Builders, J.V., v. United States*
43 Fed. Cl. 5, 9 (1999)(citations omitted) .......... 14

*Schuerman v. United States*
30 Fed. Cl. 420, 433 (1994) .......... 4

**Opinion**

2/8/96 Opinion, p. 6, Tab 1 .......... 7

**Record Excerpts**

Defendant's Brief .......... 4, 8, 12, 13

Flexfab's Brief in Support of Motion for Summary Judgment .......... 5, 12

Flexfab's Proposed Findings of Uncontroverted Facts .......... 3, 5

**Depositions**

Crockett Dep. .......... 2, 7, 9

Griffin Dep. .......... 11, 16

Jeffries Dep. .......... 2, 3, 7, 9, 10

Luich Dep. .......... 2, 8, 9, 10, 15, 16

Spratt Dep. .......... 7, 16

**Affidavits**

Cook Affidavit .................................................. 8, 17

DeCamp Affidavit.................................................. 6, 7, 17

LaJoye Affidavit .................................................. 9, 17

## I. INTRODUCTION

On March 23, 2004, Plaintiff Flexfab filed a Motion for Summary Judgment in this case pursuant to Rule 56 of the Rules of the Court of Federal Claims. The Defendant filed a simultaneous Cross-motion for Summary Judgment. The Defendant's Motion is premised upon the following erroneous assertions: 1) Flexfab is not a third-party beneficiary of the DSCC's prime contract with Capital City and even if Flexfab is a third-party beneficiary; 2) the DFAS's incorrect remittance of payment to Capital City, in violation of the governing contract, served to discharge the DSCC's obligations to Flexfab. This brief contains Plaintiff Flexfab's Response to the Defendant's Motion for Summary Judgment and demonstrates that the Defendant's Motion warrants denial as the Motion overlooks and contradicts the controlling law, contractual documents and the deposition testimony of the Defendant's <u>own</u> agents.

For the reasons stated in Flexfab's initial brief in support of Flexfab's Motion for Summary Judgment, and for the reasons stated below, the Defendant's Motion for Summary Judgment must be denied. Such denial is warranted because (1) the DSCC specifically agreed to remit payment to the escrow account located in Grand Rapids, Michigan, to ensure delivery of air ducting hose urgently needed by the United States Air Force; (2) the testimony of the DSCC's own Pre-award and Post-award Contractor demonstrates that the original Contract and the subsequent Modification both unambiguously required the DFAS to remit payment to the account located in Grand Rapids, Michigan; and (3) Flexfab is a third-party beneficiary of the DSCC's contract and entitled to damages for the DSCC's breach.

Contrary to the Defendant's Motion for Summary Judgment, Judgment in favor of Flexfab is warranted pursuant to RCFC 56, as there are no genuine issues of material fact and Flexfab is entitled to judgment as a matter of law.

## II. FLEXFAB'S RESPONSE TO DEFENDANT'S STATEMENT OF FACTS

Flexfab relies on the facts contained in its Statement of the Case and its Proposed Findings of Uncontroverted Facts filed simultaneously with its Brief in Support of its Motion for Summary Judgment filed on March 23, 2004. Moreover, Flexfab relies on its Response to the Defendant's Proposed Findings of Uncontroverted Fact filed simultaneously with this brief. Briefly stated, the Statement of Facts contained in the Defendant's brief as well as the Defendant's Proposed Findings of Uncontroverted Fact are often incomplete, sometimes inaccurate and collectively misleading. For purposes of brevity, Flexfab will not outline each of the Defendant's inaccuracies in this Response. Flexfab instead relies on its Response to the Defendant's Proposed Findings of Uncontroverted Fact filed simultaneously with this Response.

## III. ARGUMENT

### A. Flexfab is an Intended Third-Party Beneficiary of the DSCC's Contracts with Capital City.

Countless facts in this case are simply undisputed. For example, there is no dispute that the DSCC knew that Flexfab was the manufacturer of the air ducting hose required by the Government. *See* Luich Dep., p. 13, lns 19-25; p. 14, lns 1-6; p. 15, lns 21-25; p. 28, lns 5-10; p. 43, lns 1-13; p. 50, lns 3-6, Exh. D (APP-40); Jeffries Dep., p. 70, lns 5-12, Exh. F (APP-91). There is no dispute that the DSCC communicated directly with Flexfab to secure expedited delivery of the air ducting hose. *See* Crockett Dep., p. 8, lns 5-8; pp. 9-10; p. 13, lns 7-18; p. 15, lns 15-20, Exh. L (APP-127). There is no dispute

that the DSCC inspected the air ducting hose manufactured by Flexfab at Flexfab's plant. *See* Jeffries Dep., p. 53, lns 12-24 – p. 57, attached hereto at Tab 1.[1] There is no dispute that the Defendant knew that Flexfab was located in Michigan and that Capital City was located in Tallahassee, Florida. *See* Taylor Dep., p. 19, lns 14-23, Exh. H (App-99). There is no dispute that the controlling contract required the DFAS to remit payment to an account located in Grand Rapids, Michigan. *See* Flexfab's Proposed Findings of Uncontroverted Facts, ¶¶ 34, 35, 38-41. There is no dispute that the DFAS incorrectly remitted payment for air ducting hose in the amount of $452,031.60 to Capital City. *See* Flexfab's Proposed Findings of Uncontroverted Facts, ¶¶ 50, 52. There is no dispute that the DSCC intended payment to go to the account located in Grand Rapids, Michigan. *See* Flexfab's Proposed Findings of Uncontroverted Facts, ¶¶ 34, 40, 41. There is no dispute that, after incorrectly remitting payment to Capital City, DFAS and DSCC personnel attempted to correct the error and properly remit payment to the account identified in both the June 29, 1999, Contract and the September 27, 1999, Modification. *See* Flexfab's Proposed Findings of Uncontroverted Facts, ¶¶ 50, 52. These facts, and numerous others, are expressly admitted by the Defendant. The only issue in this case is whether the DSCC and Capital City intended to benefit Flexfab when they included a specific provision in the original June 29, 1999, Contract and the September 27, 1999, Modification requiring the DFAS to remit payment to an entity other than Capital City located in Grand Rapids, Michigan.

The undisputed facts reveal that Flexfab was the intended third-party beneficiary of the DSCC's prime contract with Capital City. As such, Flexfab is entitled to recover

[1] Although the Appendix filed with Flexfab's initial Brief contains excerpts from the deposition of Ms. Jeffries, the referenced pages were not included in the Appendix previously filed.

the amount that the Defendant admits was to be remitted to the account located in Grand Rapids, Michigan, but erroneously paid to Capital City in Tallahassee, Florida. As acknowledged by the Defendant, one's status as a third-party beneficiary relieves the obligation to prove privity of contract and vests this Court with jurisdiction.[2] *See Maniere v. United States*, 31 Fed. Cl. 410, 417 (1994). Contrary to the Defendant's unsupported statement, one's status as a third-party beneficiary does not require "extraordinary circumstances." Instead, and as acknowledged by the Defendant, the appropriate standard for determining whether a party qualifies as a third-party beneficiary is "whether the contract reflects the express or implied intention of the parties to benefit the third party." *See Schuerman v. United States*, 30 Fed. Cl. 420, 433 (1994); *see also*, *National Surety Corp. v. United States*, 31 Fed. Cl. 565 (1994). Determining whether the third party was an intended beneficiary requires the court to ask if the beneficiary was reasonable in believing that the promise was intended to confer a right on it. *See id*. In determining the parties' intent, courts look to the express language of the parties' agreement or, if the terms of or existence of an agreement is ambiguous, to the circumstances surrounding the agreement. *See id*.

The facts of this case demonstrate that Flexfab was reasonable in believing that the promise was intended to confer a right on it. As previously indicated and set forth in greater detail in Flexfab's prior filings with this Court, Flexfab's agreement to manufacture and deliver the air ducting hose directly to the DSCC was contingent on the

[2] The Defendant's Brief contains numerous contradictory and unnecessary arguments. For example, the Defendant devotes over a page and a half of its brief explaining why this Court does not possess jurisdiction over Flexfab's claim only to then concede that the Court would possess jurisdiction if it found that Flexfab was a third-party beneficiary. *See* Defendant's Brief, pp. 5-6, 14. Since Flexfab's Motion for Summary Judgment is premised upon the Court's finding that Flexfab was a third-party beneficiary to the DSCC's prime contract with Capital City, Flexfab will not address the Defendant's preliminary argument.

agreement of both Capital City and the Defendant to remit payment for the air ducting hose directly to Flexfab's account located in Grand Rapids, Michigan. *See* Flexfab's Brief in Support of Motion for Summary Judgment, pp. 3-5; Flexfab's Proposed Findings of Uncontroverted Facts, ¶¶ 11-13, 19, 37. Only after receiving confirmation from not one but two controlling contractual documents (the June 29, 1999, Contract and the September 27, 1999, Modification) requiring the DSCC to remit payment to Flexfab at its account in Grand Rapids, Michigan, did Flexfab agree to manufacture and ship the air ducting hose urgently needed by the Government. *See* Flexfab's Brief in Support of Motion for Summary Judgment, pp. 5-8; Flexfab's Proposed Findings of Uncontroverted Facts, ¶¶ 37, 40, 41. Without assurance that the payment from the DSCC was to be remitted directly to Flexfab, Flexfab would not have agreed to manufacture the air ducting hose required by both Capital City and the DSCC. *See id.*

Although the evidence in this case demonstrates that the parties did in fact intend to benefit Flexfab, the Defendant repeatedly contends that Flexfab could not obtain the status of a third-party beneficiary because the contract did not provide for "joint payment" to Capital City and Flexfab and Capital City did not "assign" its right to payment to Flexfab. The Defendant's arguments are immaterial to the determination of Flexfab's status as a third-party beneficiary. Although the Defendant's brief relies on cases where an assignment or a joint payment agreement vested a subcontractor with the status of a third-party beneficiary, not one of the cases in any way indicates that the absence of either such an agreement prevents a party from achieving the status of a third-party beneficiary. Case law similarly does not indicate that where the plain language of a contract specifically directs payment to a subcontractor that the subcontractor does not

achieve the status of a third-party beneficiary unless there is an agreement for joint payment or an assignment.

Instead, case law demonstrates that the opposite is true and that the plain language of a contract combined with the Government's actions are sufficient to render a subcontractor a third-party beneficiary of the Government's prime contract. For example, in 1996 the Court of Federal Claims granted Flexfab Summary Judgment based upon its status as a third-party beneficiary. As indicated in Flexfab's initial brief and the affidavit of Flexfab's president, Matt DeCamp, in 1994 Flexfab filed an action against the Government, Case No. 94-974C, based on the Government's failure to remit payment directly to Flexfab's address as required by a modified contract that identified Flexfab as the "mailee" for all payments. *See* DeCamp Affidavit, Exh. A, ¶ 13, (APP-5) (referencing the 2/8/96 Opinion attached hereto at Tab 2[3]). As in this case, the Government, contrary to the language of the modified contract, erroneously remitted payment in contravention of the modified contract directly to its prime contractor and not to Flexfab. *See id*. The prime contractor filed for bankruptcy after receiving the Government's erroneous payment. Flexfab subsequently sued the Government based upon its status as a third-party beneficiary and sought recovery of the amounts improperly paid by the Government to its prime contractor. *See id.* Flexfab was neither a joint payee nor the recipient of an assignment of the Government's prime contract.

On February 8, 1996, the United States Court of Federal Claims denied the Government's summary judgment motion and granted Flexfab's summary judgment motion on liability. *See id*. The Court permitted recovery under a third-party beneficiary

---

[3] The 2/8/96 Court of Federal Claims Opinion for Case No. 94-974C included in Flexfab's Appendix at APP-11 to APP-18 is missing pages 2 through 8. A complete copy of the Opinion referenced in the Affidavit of Flexfab president Matt DeCamp at APP-3 is attached to Flexfab's Response at Tab 2.

theory and based its decision on evidence that "clearly demonstrat[ed] that the contract modifications were intended to benefit plaintiff [Flexfab]." *See id.* In determining whether Flexfab was a third-party beneficiary, the Court examined the purpose and intent behind the prime contractor's execution of the contract modification that designated Flexfab as the mailee of the Government's payments. *See* 2/8/96 Opinion, p. 6, Tab 1. The Court quickly determined that the modification was intended to benefit Flexfab since "[t]he only possible explanation for [the prime contractor] giving up its right to payment and allowing [Flexfab] control over its funds is that it intended to benefit [Flexfab]." *See id.* Similarly, the Government's need for the material manufactured by Flexfab, its knowledge of the modification, acceptance of the material shipped by Flexfab, and the payment arrangement designating Flexfab as the mailee demonstrated that the Government intended to also benefit Flexfab. *See id.* at 11.

There are many similarities between the prior case and the case at bar. For example, the DSCC in the case at bar also urgently needed the air ducting hose supplied, manufactured and delivered by Flexfab. *See* Crockett Dep., p. 8, lns 5-8; pp. 9-10; p. 13, lns 7-18; p. 15, lns 12-24; p. 17, lns 4-7, Exh. L (APP-127). In the case at bar the DSCC not only accepted the air ducting hose but it actually inspected the air ducting hose at Flexfab's facility. *See* Jeffries Dep., p. 53, lns 12-24 – p. 57, Tab 1; Spratt Dep., p. 26, lns 9-17, attached hereto at Tab 3 of this Brief.[4] Moreover, the contractual documents in the case at bar also specifically required the Government to remit payment to an entity other than the prime contractor. The facts of this case, like the facts of the prior case,

[4] Although the Appendix filed with Flexfab's initial Brief contains excerpts from the deposition of Ms. Spratt, the referenced pages were not included in the Appendix previously filed.

demonstrate the Defendant's intent to benefit Flexfab and render Flexfab a third-party beneficiary.

Although the facts demonstrate otherwise, the Defendant argues that the contractual language directing payment to the account located in Grand Rapids, Michigan, was not intended to benefit Flexfab. In support of its argument the Defendant repeatedly states that the absence of Flexfab's name above the Grand Rapids, Michigan, address demonstrates not only that the DSCC did not intend to benefit Flexfab but also that the Defendant was not even aware of Flexfab's involvement. The Defendant's argument defies both logic and reason. The <u>undisputed</u> facts demonstrate not only that the DSCC was aware of Flexfab's role but also that Flexfab was an intended third-party beneficiary of the Defendant's prime contract with Capital City. For example:

- Mike Taylor, the Small Business Specialist at the Small Business Office in Columbus, Ohio, contacted Mr. Cook of C&S to determine whether C&S would be willing to work with both Flexfab and Capital City to facilitate the acquisition and shipment of the goods from Flexfab to the United States. *See* Cook Affidavit, Exh. B, ¶¶ 16, 17 (APP-23).

- Mr. Cook told Mr. Taylor that C&S could facilitate the sale, but he knew from his many past dealings and experience with Flexfab that Flexfab would only agree to supply the air ducting hose if an escrow account was established for its benefit to ensure proper payment. *See* Cook Affidavit, Exh. B, ¶ 18 (APP-23); LaJoye Affidavit, Exh. C, ¶ 18 (APP-31).

- Prior to even entering into the contract with Capital City, the DSCC knew that Flexfab was the manufacturer of the air ducting hose.[5] *See* Luich Dep., p. 13, lns 19-25; p. 14, lns 1-6; p. 15, lns 21-25; p. 28, lns 5-10; p. 43, lns 1-13; p. 50, lns 3-6, Exh. D (APP-40).

---

[5] Although the evidence and the testimony of the Defendant's own agents clearly demonstrate that the DSCC knew that the manufacturer of the air ducting hose was Flexfab prior to the June 29, 1999, contract, the Defendant's brief nonetheless questions whether Flexfab was even the manufacturer of the air ducting hose since "the place of shipping and inspection is not necessarily the place of manufacturing." Defendant's Brief, p. 9. Interestingly, the Defendant goes on to state that "there can be no implied relationship between the request for remittance address change and request for shipping/inspection change." *See id.* The record however demonstrates that the Defendant *was* aware of Flexfab's role as the manufacturer and such knowledge would, <u>in the words of the Defendant</u>, create such an implied relationship in support of Flexfab's status as a third-party beneficiary.

- The original June 29, 1999, Contract both identified Flexfab as the manufacturer of the air ducting hose and specifically directed the DFAS's payment to the escrow account controlled by Flexfab located in Grand Rapids, Michigan. *See* Luich Dep., p. 17, lns 14-25 – p. 19, lns 1-3; p. 24, lns 11-13; p. 28, lns 5-10, Exh. D (APP-41).

- On September 27, 1999, a contracting officer for the DSCC executed Modification P00001, which reaffirmed the parties' intent to direct payments by the DFAS to Old Kent Bank Corp. Trust in Grand Rapids, Michigan. *See* Jeffries Dep., p. 20, lns 20-25; p. 21, Exh. F (APP-88).

- In approximately January of 2000, Howard Crockett, in his capacity as an agent for the defendant, employed at the time as an inventory manager supporting supplies to the military services, contacted Flexfab directly[6] to request that Flexfab expedite the delivery of the air ducting hose to the DSCC. *See* Crockett Dep, p. 8, lns 5-8; pp. 9-10; p. 13, lns 7-18; p. 15, lns 15-20, Exh. L (APP-127-APP-128) (stating that he "did call Flexfab in order to see if they could expedite on getting parts to Capital City.")

- According to Mr. Crockett, the DSCC urgently needed the air ducting hose to supply it to the Tinder Air Force Base in Omaha City. *See* Crockett Dep., p. 9, lns 16-25; p. 10, lns 1-4; p. 17, lns 4-7, Exh. L (APP-128).

- Mr. Crockett testified that the air ducting hose provided coolant to the aircraft and that without it the Tinder Air Force Base would have been unable to perform any work on its aircrafts. *See id.*

- In response to the DSCC's request for expedited delivery, on February 22, 2000, Flexfab began directing shipments of the air ducting hose directly to the DSCC. *See* LaJoye Affidavit, Exh. C, ¶ 23 (APP-32).

The above facts not only demonstrate the Defendant's knowledge of Flexfab's integral role in the DSCC's prime contract with Capital City but also demonstrate that the DSCC took active steps to ensure Flexfab's participation in the contract. The evidence similarly demonstrates the DSCC's urgent need for the air ducting hose and the DSCC's repeated

[6] Mr. Crockett made the request for expedited delivery by contacting Flexfab directly and also by relaying the communication through Thelma Williams of Capital City. *See* Crockett Dep, pp. 9-10; p. 13, lns 7-18, Exh. L (APP-128) (stating that he "did call Flexfab in order to see if they could expedite on getting parts to Capital City"); LaJoye Affidavit, Exh. C,¶ 22 (APP-32).

agreement to direct payment to Flexfab's account in Grand Rapids, Michigan, and not to Capital City.

Similarly, the fact that neither the original contract nor the modification "expressly state" that they were executed to benefit Flexfab does not alter the fact that both documents were, in fact, executed to benefit Flexfab. Contrary to Defendant's argument, one's status as a third-party beneficiary is not contingent on how the party is labeled in a contract. The plain language of the June 29, 1999, Contract and the September 27, 1999, Modification requiring the DFAS to remit payment directly to Flexfab's account located in Grand Rapids, Michigan, demonstrate the Defendant's intent to benefit Flexfab.[7] Moreover, the Post-award Contracting Officer's lack of knowledge for the reason behind the Modification does not alter the intent of the modification. Ms. Jeffries, the Post-award Contracting Officer, testified that her only concern in the execution of a modification is that the prime contractor requested the modification. *See* Jeffries Dep., pp. 21-22, Exh. F (APP-89). The case at bar was no exception. *See id.* It is undisputed that the prime contractor requested the modification and that the modification was actually unnecessary given the language of the original June 29, 1999, Contract. *See* footnote 6, *supra.* The Post-award Contracting Officer's deference to the request of the prime contractor again demonstrates that the Defendant agreed to remit payment to the account located in Grand Rapids, Michigan and intended to benefit Flexfab.

---

[7] As indicated, the September 27, 1999, Modification was actually unnecessary since the original June 29, 1999, Contract correctly identified the escrow account located in Grand Rapids, Michigan as the proper remittance address. The deposition testimony of Ms. Luich, the Pre-award Contract Specialist, clarifies that the September 1999 modification was actually unnecessary in light of the June 29, 1999, Contract which did in fact identify Flexfab as the manufacturer of the air ducting hose and also correctly required and directed the DFAS to remit payment to the Flexfab controlled escrow account. *See* Luich Dep., p. 17, lns 14-25 – p. 19, lns 1-3; p. 24, lns 11-13; p. 28, lns 5-10; p. 43, lns 1-13, Exh. D (APP-41) (stating that page twelve of the June 29, 1999, Contract provides that Flexfab is the manufacturer of the product and that payment is to be made into an escrow account located in Grand Rapids, Michigan.)

Moreover, if the contractual language in the original contract and the Modification were not intended to benefit Flexfab then for whom were they intended to benefit? The facts demonstrate that the Defendant not only knew that Flexfab was the manufacturer of the air ducting hose but that the DSCC engaged in direct communications with Flexfab to ensure the timely and expedited delivery of the air ducting hose. The facts demonstrate that the DSCC's prime contractor, Capital City, specifically requested that the DSCC include contractual provisions in the original Contract requiring payment to be remitted, not to Capital City, but to a different entity in Grand Rapids, Michigan. The facts demonstrate that the prime contractor further required the DSCC to execute a Modification clarifying the DSCC's duty to remit payment to the account located in Grand Rapids, Michigan. The Defendant's position, that the contractual language remitting payment to the escrow located in Grand Rapids, Michigan was not intended to benefit Flexfab, is unsound as it offers no alternative beneficiary. Further, the acknowledgement by the Defendant's agents that the DFAS improperly remitted payment to Capital City coupled with the actions and efforts taken by the Defendant's agents to rectify the Defendant's error and properly remit payment to Flexfab's account, demonstrates the Defendant's intent to benefit Flexfab. *See* Griffin Dep., pp. 26-28, Exh. K (APP-122); Taylor Dep., p. 62, lns 16-24; p. 63, lns 1-12, Exh. H (APP-107).

After arguing that Flexfab could not have been a third-party beneficiary due to the DSCC's lack of knowledge of Flexfab's role in the contract, the Defendant then alternatively argues that even if the DSCC did know that Flexfab was the manufacturer and even if the DSCC did have direct communications with Flexfab regarding remitting

payment to Flexfab's escrow account, such communications were of no consequence since they occurred after the September 27, 1999, Modification and were communicated by the SBA representative and not the Pre-award or Post-award Contracting Officers. *See* Defendant's Brief, pp. 11-12. The basis of the Defendant's argument is again contradicted by the facts of the case. In fact, one need only look to the Contract in this case to know that such communications occurred prior to both the June 29, 1999, Contract and the September 27, 1999, Modification since both documents specifically required the DFAS to remit payment to the account located in Grand Rapids, Michigan.[8]

In support of its Motion, the Defendant argues, in an overly broad and unsupported statement, that Mr. Taylor, in his role as SBA agent, lacked the authority to make contractual representations and that only the Pre-award or Post-award Contracting Officers possess such authority. *See* Defendant's Brief, p. 12. Even if the Defendant's unsupported statement were true, Summary Judgment in favor of Flexfab is proper as the facts demonstrate that both the Pre-award and the Post-award Contracting Officers executed contracts intended to benefit Flexfab as each document required the DSCC to remit payment, not to the DSCC's prime contractor, but to an account located in Grand Rapids, Michigan. Certainly, not even the Defendant would dispute that the Pre-award or Post-award Contracting Officers possessed the authority to contractually bind the Defendant.

[8] Similarly, the facts demonstrate that Mr. Taylor discussed and agreed to Flexfab's condition that payment be remitted directly to it through its escrow account located in Grand Rapids, Michigan prior to both the execution of the June 29, 1999, Contract and the September 27, 1999, Modification. *See* Flexfab's Brief in Support of Motion for Summary Judgment, pp. 5-7.

**B. <u>The Defendant's Erroneous Payment to Capital City in Contravention of the Controlling Contract did not Discharge the Defendant's Duty to Pay Flexfab</u>.**

The Defendant in an incongruous and alternative argument states that, even if Flexfab was a third-party beneficiary to the DSCC's contract with Capital City, the DFAS's erroneous payment to Capital City resulted in the discharge of the DSCC's duty to Flexfab. This argument is again unsupported by case law and is contrary to the plain language of the controlling contract. Even the Defendant admits that it "**<u>could not find binding precedent directly on point</u>**." *See* Defendant's Brief, p. 15. Yet, in the absence of any authority other than general hornbook law on the rights of third-party beneficiaries, the Defendant nonetheless argues that its payment to Capital City discharged its duty to remit payment to Flexfab as required by the original Contract and the Modification. The Defendant's argument is unsupported by case law and is contrary to the controlling contract which, as admitted by Defendant's own agents, required the DFAS to remit payment to the escrow account located in Grand Rapids, Michigan.

Moreover, while case law does not support the Defendant's position, the prior decision of this Court again demonstrates that the Defendant's Cross-motion for Summary Judgment warrants denial and that Summary Judgment in favor of Flexfab is proper. As indicated, the Court of Federal Claims in Case No. 94-974C granted Summary Judgment in favor of Flexfab based upon the Government's failure to remit payment to Flexfab as required by a modified contract. The Court of Federal Claims, in determining that Flexfab was a third-party beneficiary of the Government's contract with its prime contractor, did not even address or reference the possibility that the Government's error and breach of contract served to discharge its duty to Flexfab as a third-party beneficiary.

Instead, the Court held that the modified contract specifically requiring the Government to remit payment to Flexfab instead of to its prime contractor controlled and that Summary Judgment in favor of Flexfab was proper.

**C. An Electronic Fund Provision Did Not Alter the Defendant's Duty to Remit Payment In Accordance with the Specific Language of the Original Contract and Modification.**

In a last-ditch effort to avoid the DSCC's contractual duty to remit payment according to the terms of the controlling contract, the Defendant argues that DFAS's payment to Capital City was proper because DFAS remitted payment in accordance with an electronic payment provision. As acknowledged by the Defendant, basic contract law dictates that "meaning to all of a contract's sections should be afforded so as to avoid 'conflict or surplusage of its provisions.'" *Nielsen-Dillingham Builders, J.V., v. United States,* 43 Fed. Cl. 5, 9 (1999)(citations omitted). Similarly, "each part of a contract must be read together and harmonized, if at all possible." *See id.* Where there is a conflict between two or more clauses in a contract, "the clause that is specifically directed to a particular matter controls over a clause that is general in its terms." *See id; see also Hughes v. United States*, 58 Fed. Cl. 291, 295 (2003)(where the Federal Home Loan Bank Board signed a forbearance letter that became part of the original contract between the Board and the Plaintiff, the court found that the letter took precedence over the more general provision in the contract since the letter was more specific than the terms of the original agreement).

To interpret both the June 29, 1999, Contract and the September 27, 1999, Modification as requiring the DFAS to remit payment in accordance with an electronic fund transfer provision would nullify both page 12 of the June 29, 1999, Contract and the

entire September 27, 1999, Modification. As indicated by the Pre-award Contracting Officer, the remittance address identified as the escrow account located in Grand Rapids, Michigan, controls over the boilerplate language identifying the address of Capital City Pipes. *See* Luich Dep., p. 24, lns 2-13, Exh. D (APP-42). Based upon the testimony of the Pre-award Contracting Officer and basic contract law, the June 23, 1999, letter contained at page 12 of the original June 29, 1999, contract controls over the general boiler plate language regarding electronic funds transfers. *See id.* Moreover, the execution of the September 27, 1999, Modification, which again specifically identifies the remittance address as the account located in Grand Rapids, Michigan, also demonstrates the parties' intent to remit payment to that escrow account. The specific language of both the June 29, 1999, Contract and the September 27, 1999, Modification controls over a general clause concerning electronic payment.

The testimony of the Defendant's agents further demonstrates that the Defendant's argument is baseless and unsupported. Flexfab deposed six of the Defendant's agents on topics including the execution of the June 29, 1999, Contract, the September 27, 1999, Modification and the DFAS's improper payment to Capital City. In not one of those depositions did any of the Defendant's agents, including the Pre-award and Post-award Contracting Officers, <u>ever</u> state that an electronic fund provision altered the DSCC's obligation to remit payment in accordance with the original Contract or Modification. In fact, on multiple occasions agents for the Defendant admitted that the contract required the DFAS to remit payment to the escrow account located in Grand Rapids, Michigan. In fact, Ms. Luich, the Pre-award Contracting Officer conclusively stated that while the original June 29, 1999, Contract contained two remittance addresses

that the language on page 12 of the contract identifying the Grand Rapids, Michigan, remittance address superseded the boilerplate language located at page 8 identifying Capital City Pipes. *See* Luich Dep., p. 24, lns 2-13, Exh. D (APP-42).

Similarly, in not one of the depositions did any of the Defendant's agents ever indicate that Flexfab or Capital City was at fault in this case. Instead, the Defendant's agents acknowledged the Defendant's mistake and repeatedly stated that while the contract required the DFAS to remit payment to the account located in Grand Rapids, Michigan, that payment was incorrectly remitted to Capital City. *See* Spratt Dep., p. 59, lns 9-24; p. 60, lns 14-17; p. 81, lns 1-12, Exh. I (APP-112). *See* Taylor Dep., p. 58, lns 22-24 – p. 59, lns 1-3, Exh. H (APP-106) (stating that the DSCC made payments directly to Capital City and not to the escrow account as stated in the modification). *See* Taylor Dep., p. 83, lns 2-24, Exh. H (APP-108) (stating that "a breakdown in the system" is likely what lead to the incorrect remittance of payment to Capital City). *See* Spratt Dep., p. 59, lns 9-24; p. 60, lns 14-17; p. 81, lns 1-12, Exh. I (APP-112). *See* Taylor Dep., p. 58, lns 22-24 – p. 59, lns 1-3; pp. 62-63, Exh. H (APP-106) (stating that the DSCC made payments directly to Capital City and not to the escrow account as stated in the modification and that upon learning that the DSCC had improperly remitted payment to Capital City the DSCC instructed DFAS to correct the problem and direct payment into the escrow account located in Grand Rapids, Michigan). *See* Griffin Dep., pp. 26-28, Exh. K (APP-122) (stating that he was involved in conversations with Henry Cook of C&S and Phil Kover of the DSCC to "get[] these people paid.") The Defendant's argument is unsupported by facts or law and does not alter the DSCC's obligation to remit payment to Flexfab.

**D. <u>The Course of Dealings Between Flexfab and the DSCC, as Evidenced by the Court of Federal Claims Grant of Summary Judgment in Favor of Flexfab, Evidences the Defendant's Intent to Benefit Flexfab</u>.**

Contrary to the Defendant's argument, the course of dealings between Flexfab and the DSCC also demonstrates that Summary Judgment in favor of Flexfab is warranted. As indicated in Flexfab's Proposed Findings of Fact and Flexfab's Response to Defendant's Proposed Findings of Fact, Flexfab has served as a subcontractor to the Government on numerous 8(A) contracts over the years. *See* DeCamp Affidavit, Exh. A, ¶ 10 (APP-5); Cook Affidavit, Exh. B, ¶ 8 (APP-21); LaJoye Affidavit, Exh. C, ¶ 7 (APP-30). Since Flexfab conducts all of its business with the 8(A) Program through an escrow account, Flexfab has only agreed to supply parts to the Government if it agreed to make payment directly to Flexfab by way of a Flexfab controlled account. *See* DeCamp Affidavit, Exh. A, ¶¶ 10, 11 (APP-5); *See* LaJoye Affidavit, Exh. C, ¶¶ 7, 8 (APP-30). Throughout the course of Flexfab's dealings with the Government as a supplier and manufacturer of parts, the Government has issued payment to Flexfab's controlled escrow account in Grand Rapids, Michigan. *See* LaJoye Affidavit, Exh. C, ¶ 17 (APP-31). The Government's past payments to Flexfab's escrow account located in Grand Rapids, Michigan, is further evidence that the contractual language in the June 29, 1999, Contract and the September 27, 1999, Modification, requiring the Defendant to remit payment to the escrow account located in Grand Rapids, Michigan, was intended to benefit Flexfab.

Although the Defendant attempts to distinguish the case at bar from Flexfab's prior case against the Government, the Defendant's argument demonstrates that Summary Judgment should be granted in favor of Flexfab. For example, the Defendant

states that Flexfab is not a third-party beneficiary since it was not aware of the payment arrangements in this case. However, the evidence demonstrates that the Defendant was in fact aware of the payment arrangements. For example, the controlling contractual documents in this case undeniably demonstrate that the DSCC was aware of the payment arrangements and was aware of its duty to remit payment to the account located in Grand Rapids, Michigan. Such knowledge is in part evidenced by the inclusion of the Grand Rapids, Michigan, remittance address in the June 29, 1999, Contract and the September 27, 1999, Modification documents drafted by the Defendant.

While the contractual documents alone demonstrate the DSCC's intent to benefit Flexfab, the testimony of Defendant's agents, including the Pre-award and Post-award Contracting Officers, also evidence the DSCC's intent. As indicated, not one of the Defendant's agents has disputed the DSCC's duty to remit payment to Flexfab. In fact, each of Defendant's agents unanimously testified that the contract required the Defendant to remit payment to the account located in Grand Rapids, Michigan, and not to Capital City. The controlling contract, the testimony of Defendant's agents and the prior course of dealings between Flexfab and the DSCC demonstrate that Flexfab is a third-party beneficiary of the DSCC's prime contract with Capital City and that Flexfab is entitled to Summary Judgment in its favor.

## IV. <u>CONCLUSION</u>

For the reasons set forth above and in Flexfab's initial brief in support of Flexfab's Motion for Summary Judgment, Flexfab respectfully requests that this Court deny the Defendant's Cross-motion for Summary Judgment and grant Flexfab's Motion

for Summary Judgment pursuant to RCFC 56 as there are no genuine issues of material fact and find Flexfab is entitled to judgment as a matter of law.

VARNUM, RIDDERING, SCHMIDT & HOWLETTLLP

Date: April __20____, 2004

By:______/s/ Perrin Rynders____________________
Perrin Rynders (P38221)
Mark E. Hills (P47524)
Business Address & Telephone:
Bridgewater Place/P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 20th day of April, 2004 a copy of the foregoing Plaintiff's Response to the Defendant's Cross Motion for Summary Judgment was electronically filed with the U.S. Court of Federal Claims. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system

_______/s/ Perrin Rynders____

971578_2