IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**FLEXFAB, L.L.C.,** a Michigan Limited Liability Company, successor to Flexible Horizons International, Inc., d/b/a Flexfab

Plaintiff,

v.

**UNITED STATES OF AMERICA,**

the Defendant.

Case No. 02-1096 C

Hon. Lawrence J. Block

**PLAINTIFF'S RESPONSE TO THE DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

# TAB 1

IN THE UNITED STATES COURT OF
FEDERAL CLAIMS

- - - - -

Flexfab, LLC, a Michigan :
Limited Liability Company, :
Successor to Flexible :
Horizons International, :
Inc., d/b/a Flexfab, :
Plaintiff, :
vs. : Case No. 02-1096 C
: Judge Lawrence J. Block
United States of America, :
Defendant. :

- - - - -

DEPOSITION OF MALINDA JEFFRIES

- - - - -

Taken at Defense Supply Center
3990 East Broad Street
Columbus, Ohio 43213
December 9, 2003, 2:23 p.m.

- - - - -

Spectrum Reporting LLC
333 East Stewart Avenue
Columbus, Ohio 43206
614-444-1000

- - - - -

Spectrum Reporting, LLC
Specializing in Real-Time Reporting



A P P E A R A N C E S

ON BEHALF OF PLAINTIFF:

Perrin Rynders, Esq.
Varnum, Riddering, Schmidt, Howlett
Bridgewater Place, Post Office Box 352
Grand Rapids, MI 49501

ON BEHALF OF DEFENDANT:

Claudia Burke, Esq.
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

ALSO PRESENT:

Vasso Monta



Tuesday Afternoon Session
December 9, 2003, 2:23 p.m.

- - - - -

S T I P U L A T I O N S

- - - - -

It is stipulated by and between counsel for the respective parties that the deposition of MALINDA JEFFRIES, a witness herein, called by the Plaintiff for cross-examination, may be taken at this time by the notary pursuant to notice and by agreement of counsel; that said deposition may be reduced to writing in stenotypy by the notary, whose notes may thereafter be transcribed out of the presence of the witness; that proof of the official character and qualification of the notary is waived.

- - - - -



MALINDA JEFFRIES
being first duly sworn, as hereinafter certified, testifies and says as follows:

CROSS-EXAMINATION

- - - - -

MR. RYNDERS: The record should reflect that this is the time and place for the taking of the deposition of Malinda Jeffries. Any objections to notice?

MS. BURKE: No.

BY MR. RYNDERS:

**Q. Ms. Jeffries, my name is Perrin Rynders. I represent a company by the name of Flexfab, at least the short term -- the shortened word that we'll use.**

A. Okay.

**Q. Have you given a deposition before?**

A. No, I have not.

**Q. Let me give you a few ground rules that I'd like all of us to follow.**

A. Okay.

**Q. First of all, my job is to ask questions. Your job is to answer them to the best of your ability.**

letter dated December 7, 1999, incorporated herein; is that right?
A. That's correct.
Q. Now, this exhibit does not have any letter by that date -- and if I have it, I haven't put my finger on it.
A. Okay.
Q. I'm telling you just so you don't think I'm trying to trick you. We can look for it, and maybe your counsel knows where it is, but can you explain to me what this modification is about?
A. On page 2 of 3, the modification is changing -- well, it appears to be -- it appears as that it is incorporating inspection and acceptance at origin.
Q. And if I understand what that means -- if, in fact, you're correct -- it means that somebody on behalf of the DSCC or the Department of Defense would inspect the product at Flexfab before it's shipped?
A. That's correct.
Q. It would have to pass that inspection before it could be shipped and before it would be accepted by the government?



A. That's correct.
Q. Instead of it showing up somewhere --
A. Uh-huh.
Q. -- and somebody having to do the inspection then?
A. That's correct.
Q. Okay. Bear with me for just a minute.
A. May I say one thing in response to that question?
Q. You may.
A. You stated that the contractor would have -- a government representative would have to go out to the contractor's plant and actually do an inspection. That is what this states. However, we do allow some contractors to ship based on a certificate of conformance. That means they would just sign it and conform. Sign that the items do meet all the specifications and standards whatever. And then they would be able to go ahead and ship. And depending on who the contractor is --
Q. Do you know whether that was the case for this particular project or not?
A. I do not.



Q. Is it -- are you saying that there are times when the contract would require inspection and acceptance at the point of origin, and that provision or that requirement could be satisfied by the manufacturer's certification?
A. It could be -- it could be satisfied, yes, by the contractor stating that these items are -- they conform to whatever it is we are asking for. But that is based on whom the contractor is, and we would have to -- I can't think of the clause right now. That clause would have to be in the contract.
Q. Okay. Can you -- if you take a quick look -- or take your time, actually. I'm not trying to speed you through anything -- through Exhibit 3, and tell me if you see anything in the original contract that would indicate whether or not Flexfab could certify conformity and, thereby, make -- as opposed to having somebody on the government's behalf come and actually do that inspection?
A. They could not.
Q. The contract requires that the government would do the inspection?



A. Yes, based on this contract.
Q. And so the modification, P2, would require that the inspection be done at the point of origin as opposed to the destination?
A. Modification P2, based on the information that's found in the contract, appears to be changing the place of inspection.
Q. Okay. Let me say it over again. Make sure I understand.
A. Okay.
Q. The first point, the contract requires that the inspection and the acceptance be performed by someone on behalf of DSCC, correct?
A. On behalf of the government, yes.
Q. Okay. It can't be done by Flexfab?
A. No.
Q. And it can't be done by C & S, and it can't be done by Capital City Pipes?
A. No. Because we have what you would call quality assurance representatives.
Q. Okay. And what P2 does is it changes, or at least it clarifies that that inspection to determine acceptance must be done at the point of origin before shipment?

A. It -- right. It says that it should be done at Flexfab for supplies and packaging.

**Q. Okay. Now, are these -- is the person that would do that a DSCC employee, to your knowledge?**

A. No.

**Q. For whom would that person work?**

A. The person would work at -- for DCMC Clearwater.

**Q. Okay. Which is another division of the Defense Logistics Agency? Is it part of the Department of Defense?**

A. It's part of the Department of Defense.

**Q. Okay. Good enough for me.**

MR. RYNDERS: Just off the record.

(A discussion is held off the record.)

**Q. Do you have any recollection sitting here today of preparing modification P2?**

A. No, I do not.

**Q. Do you have any recollection from having reviewed any portion of the contract file whether there are any other modifications?**

A. No. I would like to clarify something if I could.



**Q. You may.**

A. You asked about who would the person -- the quality assurance representative work for that would go out to the contractor plant and do the actual inspection, well, I see now that this modification states that he would have actually worked for DCMC, Grand Rapids, instead of Clearwater.

**Q. Okay. Do you know actually what the product was that was being purchased?**

A. No, I do not.

**Q. Do you know what its application was?**

A. No, I do not.

**Q. We've talked about Capital City Pipes. Do you know who C & S is?**

A. No, I do not.

**Q. Have you ever heard of Henry Cook?**

A. No, I do not recall.

**Q. You don't have any reason to believe that the contract modification, P1, initiated anywhere other than the request that you received? In other words, it's not something that you or somebody from the DSCC had you do, independent of a request from the prime contractor?**



A. No.

**Q. Are you aware of any reason why the modification P1 made any difference to the DSCC?**

A. Am I aware of any reason why processing the modification would have made any difference at all to DSCC?

**Q. Right. Whether the remittance address is here or there, does that affect DSCC?**

A. No. I'm not aware of any reason why that would affect DSCC.

**Q. My understanding is that there were several attempts along the way to get this contract issued, and the issuance was delayed. Whether that's true or not, my understanding is you would not have been part of that process at all; is that correct?**

A. In issuing the contract, no.

**Q. Okay. Because you were at that point in time handling matters post-award?**

A. Yes.

**Q. Okay. Do you have any idea who at DFAS would have any knowledge of that modification being received by them, the process of physically changing the remittance from one address to**



**another address or anything like that?**

A. A person?

**Q. Yes.**

A. A person's name?

**Q. That's my question.**

A. No.

**Q. Do you have any idea what position a person would be in that would know the answers to those questions?**

A. No.

**Q. Do you know the name of a single person that works at DFAS?**

A. Yes.

**Q. Okay. Do you know that person just as a friend, or is there some reason why you have business dealings with people at DFAS?**

A. Yes.

**Q. Can you just briefly explain that to me?**

A. I would have dealings with persons at DFAS in the post-award positions, primarily -- mostly, the reasons why I've dealt with DFAS is because the contractor has, for some reason, been unable to get paid, and they are requesting