IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**FLEXFAB, L.L.C.,** a Michigan Limited Liability Company, successor to Flexible Horizons International, Inc., d/b/a Flexfab

Plaintiff,

v.

**UNITED STATES OF AMERICA,**

the Defendant.

Case No. 02-1096 C

Hon. Lawrence J. Block

**PLAINTIFF'S RESPONSE TO THE DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

# TAB 2

# United States Court of Federal Claims

February 8, 1996

94-974 C

FLEXFAB, INC.,

Plaintiff,

versus

UNITED STATES OF AMERICA,

Defendant.

---

Perrin Rynders, Grand Rapids, MI, for plaintiff.

Armando O. Bonilla, with whom were Assistant Attorney General Frank W. Hunger, David M. Cohen and Kirk T. Manhardt, Washington, DC, for defendant. Susan McKee and Carol N. Matheke, Defense Logistics Agency, Columbus, OH, of counsel.

## OPINION AND ORDER

TURNER, Judge.

This government contract case stands on cross-motions for summary judgment. For reasons stated below, we conclude that the government's motion for summary judgment filed July 7, 1995 must be denied and that plaintiff's motion for summary judgment on liability issues filed August 22, 1995 should be granted.

## I

The following facts, derived from plaintiff's complaint and both plaintiff's and defendant's dispositive motions, are undisputed.

Plaintiff is a manufacturing firm specializing in parts for military vehicles. During the Gulf War, plaintiff was a subcontractor to Gladen Industries Inc. During the period at issue in this case, Gladen had three contracts to supply aircraft and submarine parts to the Defense Construction Supply Center (DCSC) (an agency within the Department of Defense). Plaintiff, in turn, supplied the vehicle parts to Gladen under its subcontract. This suit arises out of business interactions among plaintiff, Gladen and DCSC.

In 1991, plaintiff entered the subcontract with Gladen. Shortly after the commencement of contract performance, Gladen became late in making payments. In response, plaintiff refused to ship additional parts until Gladen provided a guarantee of payment. Consequently, Gladen fell behind in its deliveries to DCSC. Gladen tried to obtain a letter of credit guaranteeing payment to plaintiff but was unsuccessful.[1] Instead, Gladen agreed to provide plaintiff with the authority and means to endorse all checks representing payment from DCSC to Gladen under the prime contracts. All three of the prime contracts were modified to designate plaintiff as the "mailee" for all payments, and thereafter checks for payment under the contracts between DCSC and Gladen were to be sent directly to Flexfab. Pursuant to this new arrangement, plaintiff delivered all remaining shipments directly to DCSC, and DCSC accepted the shipments.

When DCSC made payment for the shipments at issue, the checks were sent to Gladen rather than to plaintiff. Before plaintiff was able to recover all of the money it was owed for the shipments delivered to DCSC, Gladen filed a bankruptcy petition. Plaintiff now sues to recover $25,868.86 from the government. This figure represents the difference between the amount DCSC paid to Gladen, $38,574.12, and the amount plaintiff was able to recover from Gladen prior to the bankruptcy, $12,705.26.

II

Plaintiff asserts alternative theories. Plaintiff claims that it is entitled to recover either because the government breached an express or implied contract to pay plaintiff directly or under a third-party beneficiary theory.

The government moves for summary judgment on both of plaintiff's theories of recovery. First, the government contends

---

[1] Defendant's answer states that defendant lacks sufficient knowledge to form a belief as to the business relationship between Gladen and plaintiff. To that extent, the background facts regarding plaintiff and Gladen's business interactions are not admitted by defendant but are not challenged by evidentiary submissions.

that privity is a prerequisite to recovery on a contract claim and that privity of contract did not exist between DCSC and plaintiff. Second, the government argues that plaintiff has not alleged sufficient facts to establish entitlement under its third-party beneficiary theory.

Plaintiff's cross-motion alleges that the government entered into an express or implied contract with Flexfab, thus establishing privity. In the alternative, plaintiff claims that the government intended the contract modifications designating plaintiff as "mailee" to benefit plaintiff directly. Therefore, plaintiff argues it is entitled to recover as a third-party beneficiary. It is plaintiff's contention that no genuine issues of material fact are raised by the government's answer or motion for summary judgment and that summary judgment should be granted in plaintiff's favor.

III

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir. 1987). A "material fact" is a fact that could make a difference in the outcome of a case. *Curtis v. United States*, 168 F.Supp. 213, 216 (Ct.Cl. 1958), *cert. denied*, 361 U.S. 843 (1959). Only disputes over facts that might affect the outcome of a suit properly will prevent the court from entering summary judgment. *Anderson*, 477 U.S. at 248.

The moving party initially bears the burden of demonstrating the absence of any genuine issue of material fact. That burden may be discharged by showing the absence of evidence in support of the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), *cert. denied*, 484 U.S. 1066 (1988). Once the moving party has discharged its burden, the burden of proof then rests upon the party opposing the motion to prove by sufficient evidence that a genuine issue of material fact positively remains. *Id.* at 324-25. There is no genuine dispute over material facts where the evidence presented "is so one-sided that one party must prevail as

a matter of law." *Anderson*, 477 U.S. at 252.

The fact that plaintiff and defendant both motion for summary judgment, alleging the absence of genuine issues of material fact, does not "relieve the court of its responsibility to determine the appropriateness of summary disposition in the particular case." *Commodities Recovery Corp. v. United States*, 34 Fed.Cl. 282, 288 (1995), *citing Prineville Sawmill Co. v. United States*, 859 F.2d 905, 911 (Fed.Cir. 1988). We treat the parties' cross-motions as separate claims by each party that it alone is entitled to summary judgment. Each motion is evaluated on its own merits, with all reasonable inferences drawn against the party whose motion is being considered. *Commodities Recovery Corp.*, 34 Fed.Cl. at 289, *citing Mingus Constructors*, 812 F.2d at 1391.

**IV**

**A**

Plaintiff argues that a contract was formed when Flexfab agreed to provide parts to DCSC in exchange for direct payment. Plaintiff contends that the government breached this contract when it paid Gladen for the shipments sent by Flexfab. The government contends that DCSC contracted solely with Gladen, that there was no privity between DCSC and Flexfab, and, consequently, that plaintiff's claim is precluded and the government is entitled to judgment as a matter of law.

To the extent that the government argues that privity is generally a prerequisite to recovery on a contract claim, we agree. The Tucker Act constitutes a waiver of sovereign immunity with respect to the claims specified in the Act. *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *United Elec. Corp. v. United States*, 227 Ct.Cl. 236 (1981), *cert. denied*, 454 U.S. 863 (1981). For a contract claim to be properly brought under the Act, either privity of contract or a demonstration that an exception to the privity requirement applies must be shown. *Maniere v. United States*, 31 Fed.Cl. 410, 416 (1994). Absent privity or an exception to the privity requirement, the United States cannot be said to have entered a contractual relationship with a claimant.

The government argues that it never contracted with plaintiff

directly and thus cannot be contractually bound to plaintiff. Because we decide this motion under plaintiff's third-party beneficiary theory of recovery, we find it unnecessary to address the arguments regarding privity.

**B**

The most common exception to the privity requirement of contract law is the third-party beneficiary doctrine: "To avoid the privity requirement and demonstrate jurisdiction in this Court, a claimant may assert the status of a third-party beneficiary." *Maniere*, 31 Fed.Cl. at 417, *citing Blaze Constr. Inc., v. United States*, 27 Fed.Cl. 646, 651 (1993). To qualify as a third-party beneficiary, "a plaintiff must demonstrate more than that he merely benefits from a contract to which he is not a party." *Maniere*, 31 Fed.Cl. at 417 *citing Erikson v. United States*, 12 Cl.Ct. 754, 757 (1987). To succeed with a third-party beneficiary claim, plaintiff must show that the intention of any other parties to the agreement was to benefit plaintiff specifically. *Penn Towne Builders, Inc. v. United States*, 4 Cl.Ct. 677, 682 (1984). Thus, for plaintiff to qualify as a third-party beneficiary to the prime contract between Gladen and DCSC, both Gladen and DCSC must have intended the contract modifications to benefit plaintiff directly. *See also National Sur. Corp. v. United States,* 31 Fed.Cl. 565 (1994); *Schuerman v. United States*, 30 Fed.Cl. 420 (1994).

We apply the "intent to benefit" requirement pursuant to *Schuerman*. As set forth in 4 A. CORBIN ON CONTRACTS § 775 (1951):

> The right of a third party beneficiary rests chiefly upon the fact that the contract will *create reasonable expectations on his part and will induce him to change his position in reliance*. But it rests also upon the fact that permitting enforcement by the beneficiary will carry out the intentions and satisfy the expectations of the promisee with the least amount of litigation. [Emphasis added.]

Evaluation of plaintiff's third-party beneficiary claim requires us to examine whether it has "demonstrated that the contracting parties ... expressly or impliedly intended the contract to benefit [plaintiff]." *Schuerman*, 30 Fed.Cl. at 433.

To determine the intent of the parties, we examine the

agreement proferred to support the third-party beneficiary claim, i.e., the modifications designating plaintiff as "mailee." *See Penn Towne Builders*, 4 Cl.Ct. at 709; *Maniere*, 31 Fed.Cl. at 417. If the contract itself is not clear, a court looks to the circumstances surrounding the agreement to determine the parties' intent. *See National Surety Corporation*, 31 Fed.Cl. at 565 (where contract silent as to contended issue, court looked to declarations of witnesses and relevant documents).

The contract modifications designate plaintiff as "mailee" but maintain Gladen as "payee". The intent of the parties is not clear on the face of the contract. Designation of plaintiff as "mailee" is not sufficient, in itself, to conclusively prove that both DCSC and Gladen intended to benefit plaintiff directly through this designation. Thus, we examine the modifications within the context of the surrounding circumstances, as demonstrated by the evidence, to determine the intent of the parties.

It is undisputed that Gladen entered into the contract modifications with the intent to benefit plaintiff. Indeed, there could be no other interpretation of Gladen's intent. Gladen asked DCSC to send all payments directly to plaintiff and authorized plaintiff to endorse and cash the payment checks. The only possible explanation for Gladen giving up its right to payment and allowing plaintiff control over its funds is that it intended to benefit plaintiff.

The issue remaining is whether the government intended to benefit plaintiff directly when it agreed to the modifications. Plaintiff argues that changing the payment remittance address so that plaintiff would receive direct payment is, in itself, conclusive evidence that the government intended to benefit plaintiff. The government counters that it changed the remittance address simply for the convenience of its prime contractor and denies that it modified the contract with the intent of benefitting plaintiff.

**1. Plaintiff's Position**

The following additional facts are taken from the plaintiff's affidavits and documentary submissions and for the purposes of this

section are accepted as true. Plaintiff contends that the modifications designating Flexfab as "mailee" for payments under the prime contract resulted from a three-way negotiation among it, Gladen and the government. According to plaintiff, the modifications were part of an arrangement worked out by the three parties to insure that plaintiff was paid, that the government received parts, and that Gladen didn't default on its contract with DCSC.

Plaintiff contends that its problems with Gladen initially came to a head on June 6, 1991 when plaintiff refused to ship any additional parts because it had not yet been paid for past shipments. When plaintiff stopped delivery, Gladen could not fulfill the requirements of its contracts with DCSC. The situation came to a total standstill in August 1991, when Flexfab informed Gladen that it would not make any more shipments unless it received a guarantee of payment.

According to plaintiff, all three parties had a vested interest in resolving the standstill: Flexfab wanted the benefits of its contract with Gladen but needed the protection of guaranteed payment; Gladen wanted to avoid default on its contract with DCSC; and the government wanted to insure prompt delivery of vehicle parts needed for Operation Desert Storm.

Plaintiff alleges that extensive negotiations occurred among itself, Gladen, and the government as the parties attempted to find a solution that would meet the goals of each of the parties. According to the affidavit of the Flexfab Accounts Receivable Clerk in charge of the Gladen/Flexfab contract:

> Gladen, Flexfab, and the Government thereafter entered into a series of discussions and negotiations in an attempt to reach a satisfactory resolution. Initially, my primary Government contact was Libby Harrison; as negotiations became more serious, however, Mrs. A.J. Turner became more involved.

Tebo Aff. ¶ 9.

Plaintiff asserts that during negotiations it asked to be designated as "payee" under the prime contract, seeking official assignment of Gladen's rights under the prime contract. According to plaintiff, DCSC rejected this idea because formal assignment of

Gladen's contract rights required rebidding the contract. Rebidding would result in delay which was unacceptable to DCSC. According to Tebo:

> [Flexfab Contract Manager,] Ken Green[,] ... then discussed with the government the possibility of changing the "issued to" on Gladen's contracts with the Government from Gladen to Flexfab so that Flexfab would be guaranteed payment and would agree to begin delivery of parts under the contract. The Government informed Gladen and Flexfab that this change could not be done without having the contract rebid and that, because these parts were required for Desert Storm, the Government was unwilling to rebid these contracts because of the substantial time involved.

Tebo Aff. ¶ 8; *See also* Letter from Green to Harrison at Defense Logistics Agency of 11/18/91, Def.'s Mot. Summ. J., Ex. 6 (requesting that Flexfab be designated as both "payee" and "mailee"). This evidence is supported by the statement of Flexfab's Treasurer, Jeffrey Weiden, that he asked Tebo to inform DCSC that Flexfab would not make any shipments until it was guaranteed payment, that Tebo kept him informed of ongoing discussions among the three parties, and that he was informed that the government was unwilling to designate Flexfab as payee. Weiden Aff. ¶ 6, 7, 8.

Plaintiff alleges that the these three-way negotiations eventually led to a compromise agreement in late 1991. According to plaintiff, because the government believed that an official assignment would result in unacceptable delay, the parties agreed to implement a less formal arrangement designed to accomplish the same goals.

Under the compromise agreement, DCSC agreed to mail the payments it owed Gladen under the prime contract directly to Flexfab. *See* Revised Letter from Green to Harrison of 11/25/95, Def.'s Mot. Summ. J., Ex. 5 (designating Flexfab as "mailee" but not "payee"); Tebo Aff. ¶ 10 ("Jeff Weiden of Flexfab ... suggested the possibility of changing the remittance address on these contracts to indicate that payment should be made directly to Flexfab."); Tebo. Aff. ¶ 11 ("The Government agreed to Mr. Weiden's suggestion and requested that Flexfab amend the November 25, 1991

letter asking the government to change both 'the payee and remittance address' on ... Gladen's contracts with the Government to indicate that only the remittance address was to be changed."); Weiden Aff. ¶ 8 ("Mrs. Turner confirmed that my suggestion was acceptable to the Government and that this solution would take care of my concerns about payment on these contracts.").

The second step in the process of informally turning Gladen's contract rights over to Flexfab entailed Gladen granting Flexfab authority to endorse the checks it received from DCSC. Flexfab agreed to renew deliveries as soon as it had the authority to cash checks made out to Gladen and disbursed under the contracts with DCSC. According to Tebo:

> Upon receiving the endorsement stamp, I informed Mrs. Turner at the DCSC via facsimile on December 5, 1991, that Flexfab had received the endorsement stamp and was ready to proceed on the contracts as soon as the contract modifications were enacted.

Tebo Aff. ¶ 12. A copy of the facsimile is Pl.'s Mot. Summ. J., Ex. 4 and Def.'s Mot. Summ. J., Ex. 8; A copy of the endorsement letter is Def.'s Mot. Summ. J., Ex. 9.

The final step in the arrangement was for Flexfab to make shipments directly to DCSC. Gladen agreed to this arrangement. *See* Letter from Green of 12/20/91, Pl.'s Mot. Summ. J., Ex. 6 (authorizing Flexfab to ship orders directly to the government). Flexfab proceeded according to the new arrangement. *See* Tebo Aff. ¶ 14 ("Flexfab shipped these orders in December 1991 and January 1992.").

According to plaintiff, the modifications designating Flexfab as "mailee" were simply one step in an arrangement among it, Gladen, and the government -- an arrangement that was negotiated both by and for the benefit of all three parties. Plaintiff specifically alleges that the government was an active participant in the negotiations that led up to the modifications and clearly intended the modifications to directly benefit Flexfab.

Plaintiff argues that it is entitled to judgment as a matter of law on its cross-motion for summary judgment against defendant.

2. **Defendant's Position**

The following facts are taken from the answer, from defendant's motion for summary judgment, from defendant's proposed findings of uncontroverted fact and from defendant's response to plaintiff's cross-motion for summary judgment.

The government claims that it did not intend to benefit plaintiff when it modified its contract with Gladen and further denies any participation in negotiations with Gladen and plaintiff. According to defendant:

> Had the Government intended to make Flexfab a direct beneficiary under the purchase orders in issue, such intent would have been evidenced by a novation agreement and subsequent modifications to the contract making Flexfab the prime contractor.

Def.'s Mot. Summ. J. at 9. The Contract Specialist who performed contract administration for the modifications at issue, Turner, stated in her affidavit:

> My normal practice, if a contractor requests a change of payee and/or remittance address, is to inform the contractor that they must make the request in writing. It would not be my normal practice to tell a contractor who wanted to change a payee that it could not be done because the Government would have to rebid the contract.

Turner Aff. ¶ 2 (6/15/95).

Defendant does not specifically respond to plaintiff's contention that, in this case, the government refused to follow the normal procedure of getting a novation and assignment because it would require rebidding the contract and result in delay which was unacceptable under the circumstances (the Gulf War). Thus, the testimony of defendant's affiant is not directly responsive to plaintiff's evidence. The government does not contradict the statements of fact alleged by plaintiff's affiants Tebo and Weiden explaining that under wartime conditions, the government did not follow "normal procedures."

The government does specifically deny participating in the negotiations that led to the modifications:

> [T]he modifications in issue ... were executed at the request of Gladen to implement a financial arrangement between a general contractor (Gladen) and its

> subcontractor (Flexfab); the government was not a party to the agreement, nor did the government participate in the negotiations between Gladen and Flexfab.

Def.'s Mot. Summ. J. at 9. The government's affiant, Turner, stated that she did "not recall having any discussions with Flexfab about paying Flexfab directly" (Turner Aff. ¶ 3 (6/15/95)), and denies negotiating an agreement with plaintiff:

> As a Contract Specialist, I do not negotiate agreements with subcontractors. I have discussion or negotiations with the prime contractor, which is the party with whom the government has the contract or purchase order. I did not negotiate any agreement with Flexfab in this case.

Turner Aff. ¶ 3 (9/20/95).

However, under plaintiff's third-party beneficiary theory, evidence of an agreement between the government and plaintiff is not necessary. All that plaintiff must show is that the parties to the prime contract intended to benefit plaintiff directly. This status may be established by implication. *Schuerman*, 30 Fed.Cl. at 433.

The government does not deny that it was aware of the arrangement between Gladen and Flexfab. In fact, defendant's own submissions provide conclusive proof that the government was fully informed regarding the arrangement. Included in defendant's proposed findings of uncontroverted fact is a finding that on December 5, 1991 plaintiff informed the government that Gladen had agreed to "permit [plaintiff] to endorse any checks the Government issued to Gladen relating to the purchase orders in issue [and] ... that work under the purchase orders would begin 'as soon as [Flexfab] received the mods changing the remittance address'." Def.'s Proposed Findings Uncontroverted Fact ¶ 8. Further, exhibit 8 to defendant's motion for summary judgment, a facsimile from plaintiff to Contract Specialist Turner together with an accompanying copy of the letter of agreement between Flexfab and Gladen, demonstrates beyond peradventure that DCSC contract officials were aware of the payment arrangement between plaintiff and Gladen and that plaintiff would ship parts when the contracts had been modified to designate plaintiff as the "mailee" for

payment.

Also submitted by defendant as uncontroverted fact is a finding that on December 9, 1991 DCSC issued unilateral contract modifications for each of the three purchase orders in issue changing the remittance address. Def.'s Proposed Findings Uncontroverted Fact ¶ 9. Defendant does not dispute that upon receipt of the modifications, plaintiff promptly made shipments pursuant to the purchase orders or that the shipments were sent directly from plaintiff to DCSC.

In short, defendant admits that it was informed that Gladen agreed to permit plaintiff to endorse checks representing payment by the government and that plaintiff agreed to make shipments to the government only if defendant modified the contracts, designating plaintiff as "mailee" for payment. Defendant further admits that it made the requested modification and subsequently received the shipments.

Under the circumstances outlined above, we conclude that the evidence clearly demonstrates that the contract modifications were intended to benefit plaintiff.

V

The evidence supporting plaintiff's claim consists of the allegations made in its brief, extensive supporting documents in the form of letters, facsimiles and invoices, and detailed affidavit testimony included as an appendix to the brief. We find this evidence convincing for several reasons. The affidavits are detailed in describing the government's active involvement in negotiations with plaintiff and Gladen. The documents cited by plaintiff are consistent with plaintiff's version of the facts and support the statements of plaintiff's affiants. Finally, nowhere does the government specifically contest the details of plaintiff's statements of fact.

In response to plaintiff's claims and the evidence plaintiff has provided, defendant merely reiterates the fact that plaintiff was never made "payee" under the contract, repeats its assertion that mere designation of Flexfab as "mailee" is not sufficient to show intent to benefit, and denies negotiating an agreement with

plaintiff. Because the government does not contradict the factual details of plaintiff's affidavits, we conclude that no genuine issues of material fact remain in this case.

VI

Based on the forgoing, plaintiff's cross-motion for summary judgment on liability issues filed August 22, 1995 is GRANTED and defendant's motion for summary judgment filed July 7, 1995 is DENIED. Judgment for plaintiff shall be withheld pending resolution of damages issues.[2]

The parties are requested to agree upon the precise amount of damages to which plaintiff is entitled and upon the correct date for accrual of interest pursuant to 41 U.S.C. § 611. The parties shall file a joint status report by Monday, March 11, 1996 covering these subjects.

James T. Turner
Judge

[2] Upon entry of judgment, plaintiff shall be awarded costs pursuant to RCFC 54(d) ("costs shall be allowed as a matter of course to the prevailing party").