IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FLEXFAB, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-1096C |
| v. | ) | (Judge Block) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56(h) of the rules of this Court ("RCFC"), defendant, the United States, respectfully submits this opposition to the cross-motion for summary judgment filed by plaintiff, Flexfab LLC ("Flexfab").

## STATEMENT OF THE CASE

### I. Nature Of The Case

As we explained in our cross-motion for summary judgment, this case concerns a contract between the United States, acting through the Department of Defense, Defense Supply Center Columbus ("DSCC") and Capital City Pipes ("Capital City"). Flexfab, a third-tier subcontractor of Capital City, alleges that a modification to contract SPO740-99-C-1004, to change the remittance address, was issued with the intent to benefit Flexfab and that the Government breached that modification.

### II. Statement Of Facts

For our statement of facts, we rely primarily upon our proposed findings of uncontroverted fact, filed simultaneously

with our cross-motion for summary judgment. Briefly stated, this case concerns a contract between the United States, acting through the Department of Defense, Defense Logistics Agency, Defense Supply Center Columbus ("DSCC") and Capital City Pipes, Inc. ("Capital City"). The plaintiff, Flexfab, acted as Capital City's third-tier subcontractor and supplier in this contract. Flexfab contends, first, that a change in remittance address requested by Capital City on June 23, 1999, and again on July 1, 1999, was intended to benefit Flexfab, and second, that DSCC breached its contract with Flexfab by failing to remit payment to the proper address. However, nothing in Capital City’s request or the amendment indicates that Capital City and DSCC intended directly or indirectly to benefit Flexfab.

## ARGUMENT

### I. Standard Of Review

Summary judgment may be granted where there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987); Ralph Larson & Son, Inc. v. United States, 17 Cl. Ct. 39, 42 (1989).

A court may consider a motion for summary judgment in stages. The initial inquiry should be whether the movant has

presented an adequate legal basis for its motion. E.g., Ralph Larson, 17 Cl. Ct. at 43. If the legal support is insufficient, then the inquiry is at an end and the motion must be denied. E.g., Anderson, 477 U.S. at 250 ("There is no requirement that the trial judge make findings of fact."). Once a movant has established an adequate legal basis for its motion, the Court must consider whether the opposing party has identified any genuine issues of material fact. The first step is to determine whether the issues raised are truly factual issues, or are issues of law. The second step is to determine what subset of the truly factual issues are material to the decision of the case. The third step is to examine the evidence presented by the parties to determine whether there is any genuine issue concerning any material factual issue. Ralph Larson, 17 Cl. Ct. at 43 (describing three steps); accord Anderson, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

## II. Flexfab Is Not A Third-Party Beneficiary To The Contract Between DSCC And Capital City

Flexfab is not a third-party beneficiary to the Government's contract with Capital City. To qualify as a third-party

beneficiary, Flexfab must show that the contracts reflect the parties' express or implied intent to benefit Flexfab. Schuerman v. United States, 30 Fed. Cl. 420, 433 (1994).

A. Flexfab Has Not Demonstrated Any Express Or Implied Intent To Benefit It

As we demonstrated in our cross-motion for summary judgment, Flexfab has not demonstrated that DSCC had any express or implied intent to benefit Flexfab. The documentary evidence does not contain any discernable intent to benefit Flexfab, nor does the testimonial evidence. Flexfab attempts to cloud the issue by suggesting Flexfab's alleged refusal to supply air duct hose to Capital City without an escrow agreement is evidence of intent to benefit Flexfab. DeCamp Affidavit ¶ 4, Pl. App. p. 6.[1] Whether Flexfab did indeed refuse to provide air duct hose to Capital City is irrelevant to this case. DSCC was not a party to any agreement that Capital City may have held with Flexfab, therefore, it could not have intended to benefit Flexfab.

To the extent that Michael Taylor of DSCC's Small Business Office may have been aware that Flexfab desired an escrow

[1] Although we do not believe his affidavit presents any material facts relevant to this case, it is noteworthy that Mr. De Camp was never identified to the Government as a possible witness having knowledge of this case.

Citations to "Pl. App. ___" refer to the appendix filed with plaintiff's motion. Citations to "A__" refer to the appendix filed with our motion, filed on March 23, 2004.

account, Mr. Taylor was not an authorized representative of DSCC capable of demonstrating intent to benefit Flexfab.[2] It is a well recognized rule that "anyone entering into an arrangement with the government takes the risk of having accurately ascertained that he who purports to act for the government stays within the bounds of his authority." Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947). It is equally well-settled that when an agent exceeds his authority, the Government is not bound by acts of its agents beyond the bounds of that agent's actual authority. Humlen v. United States, 49 Fed. Cl. 497, 503 (2001) (citing Essen Mall Properties v. United States, 21 Cl. Ct. 430, 445 (1990)).

As we demonstrated in our moving brief, to the extent that Flexfab relied upon Mr. Taylor's representations to another company regarding another contract, it did so at its peril. As no one with authority to bind the Government intended to make Flexfab a third-party beneficiary, Flexfab is not a third-party beneficiary. US Ecology, Inc. v. United States, 245 F.3d 1352,

---

[2] The evidence cited by Flexfab is not from Mr. Taylor, rather, it is from Henry Cook, who is not a representative of Flexfab. Mr. Cook is the president of C&S Industrial Supply. C&S Industrial supply acted as Capital City's 2d-tier subcontractor in this case. Compl. at attachment 1, ¶¶2, 17. Flexfab worked with C&S Industrial Supply both before and during the contract. Pl. Motion at 5.

1356 (Fed. Cir. 2001).

Even if Mr. Taylor had discussed with Flexfab and Capital City the possibility of an escrow account, the SBA representative does not have authority to bind the Government. Therefore, Mr. Taylor's statement that the alleged escrow account in this case benefitted Flexfab is of no import. A96. Instead, the SBA representative is tasked solely with promoting the participation of small businesses in Government contracts. See 15 U.S.C. § 644. Only the contracting officer can bind the Government. See, e.g., Trauma Service Group v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997) (specific authority required to bind the Government). Importantly, there is no evidence that Mr. Taylor ever discussed an escrow agreement with any authorized representative of DSCC.

Moreover, DSCC did not know the purpose of the request for change of remittance address or the purpose of the request for modification to the contract to change the remittance address. Flexfab incorrectly, and without support, states that "DSCC established the escrow account for the specific purpose of convincing Flexfab to perform and consequently ensure that the DSCC would receive the air ducting hose that it required." Pl. Motion at 13. To the contrary, DSCC agents testified that it was not their concern why Capital City requested a remittance address

change. A78. Nor were DSCC agents aware that the new remittance address was an escrow account controlled by Flexfab. A89, A78A.[3]

B. Flexfab Misapplies *D& H Distributing* And *Norwest*

Flexfab mistakenly relies upon D&H Distributing Co. v. United States, 102 F.3d 542 (Fed. Cir. 1996), and Norwest Bank Arizona v. United States, 37 Fed. Cl. 605 (1997). As we demonstrated in our moving brief, these cases are easily distinguishable from this case. For example, in D&H, the United States Court of Appeals for the Federal Circuit ("Federal Circuit") found a third-party beneficiary relationship where the contract between the Government and the prime contractor expressly provided for joint payment to the prime and the subcontractor. D&H, 102 F.3d at 545. Here, neither the contract nor the modification provides for joint payment. A6, A45.

Flexfab similarly misapplied Norwest. In Norwest, this Court found a subcontractor to be a third-party beneficiary where a prime had assigned its claims to a subcontractor and the contract's payment provision was modified in accordance with the

---

[3] Although Flexfab suggests that Michael Taylor was aware that the new remittance address was, in fact, an escrow account, Mr. Taylor's testimony refutes this suggestion. A93.

In any event, Mr. Taylor's knowledge is irrelevant as he was not a contracting officer, nor did he discuss Flexfab with any relevant contracting officers.

assignment. Norwest, 37 Fed. Cl. at 605.[4] There has been no assignment to Flexfab. As demonstrated in our moving brief, although Capital City requested remittance of payment to different addresses, it never suggested that it was assigning or transferring its right to payment to Flexfab. A46, A76. Additionally, the Government never agreed to make payment to Flexfab either jointly or independently.

Flexfab also misapplies this Court's decision in Flexfab, Inc. v. United States (Fed. Cl. No. 94-974, Feb. 8, 1996), Compl. at Attachment 10. In Flexfab, this Court found that there was direct communication between Flexfab and the Government regarding payment. The Court held that this conduct demonstrated an intent to benefit Flexfab. Id. Here, however, there has been no conduct whatsoever between Flexfab and DSCC regarding payment. The only communication between Flexfab and DSCC was conversations regarding expedited shipment. Pl. PFUF ¶ 46. Therefore, this case does not present the same manifest intent to benefit

[4] Flexfab suggests that DSCC was aware that Capital City had financial problems prior to the date of this contract. Pl. PFUF ¶ 28. This is incorrect. In the testimony cited by Flexfab, Mr. Taylor and Ms. Spratt, the supervisory contract specialist for this contract, mention Capital City's payment issues pursuant to another contract but do not state that these problems predated Capital City's involvement with Flexfab. Pl. App. 103-104, 111. Moreover, Capital City was certified by the SBA as financially capable. A2-3.

Flexfab.

III. No Implied-In-Fact Contract Exists Between Flexfab And DSCC

As we demonstrated in our cross-motion for summary judgment, this Court does not possess jurisdiction to entertain this complaint because Flexfab lacks privity with the Government. Flexfab has not overcome this jurisdictional barrier because it has not sufficiently proved that there existed any implied-in-fact contract between it and the Government.

As a general matter, subcontractors "do not have the right to seek and collect contractual damages from the Government . . . because they usually are not in contractual privity with the Government." Lockheed Martin Corp. v. United States, 50 Fed. Cl. 550, 554 (2001) aff'd, 2002 WL 31164088 (Fed. Cir. 2002). In order to qualify for the few exceptions to this rule, a subcontractor must have entered into an "explicit or implicit contract with the Government." Id.

Flexfab incorrectly asserts that, even if it is not a third-party beneficiary of the contract between Capital City and DSCC, it should, nevertheless, benefit from an implied-in-fact contract between it and DSCC. The Federal Circuit has held that:

> To show jurisdiction in the Court of Federal Claims, [the plaintiff] must show that either an express or implied-in-fact contract underlies its claim. A well-pleaded allegation in the complaint is sufficient to

> overcome challenges to jurisdiction. [The plaintiff's] complaint alleges that an express and, in the alternative, an implied-in-fact contract underlies its claim. This allegation suffices to confer subject matter jurisdiction in the Court of Federal Claims.

Trauma Service Group, 104 F.3d at 1325 (citations omitted).

To assert jurisdiction based upon an implied-in-fact contract, Flexfab must allege a mutual intent to contract including an offer, an acceptance, and consideration. See Trauma Service Group, 104 F.3d at 1325; Lion Raisons, Inc. v. United States, 54 Fed. Cl. 427, 431 (2002). Moreover, Flexfab must establish that the alleged implied-in-fact contract was entered into with an authorized agent of the United States, who "had actual authority to bind the United States." Trauma Service, 104 F.3d at 1325-26; City of El Centro, 922 F.2d 816, 820 (Fed. Cir. 1990).

Flexfab has not demonstrated that an authorized agent of the United States had intent to contract with Flexfab. As we demonstrated in our cross-motion for summary judgment, Flexfab had no contact with either Anita Luich or Melinda Jeffries, the contracting officers and the only authorized agents of the Government. A78A, A89, A96. Moreover, Mr. DeCamp's affidavit suggests no direct contact between Flexfab and DSCC. Without any oral or written contact, Flexfab cannot demonstrate that any

authorized agent of the Government made an offer to Flexfab. Without an offer, Flexfab cannot demonstrate acceptance.

Although Flexfab did provide air duct hose to DSCC, it did so as a third-tier subcontractor to Capital City. It did not do so as a prime contractor with the Government. Flexfab relies upon Flexfab's delivery and the Government's acceptance in its misapplication of Johnson Controls World Services v. United States, 44 Fed. Cl. 334, 347 (1999). In Johnson Controls, this Court declined to find whether an implied-in-fact contract existed. Nevertheless, it stated, in dicta, that an implied-in-fact contract may exist when the Government continually accepts services with the knowledge that plaintiff expects to be paid and the Government continues to accept services after a demand has been made. Johnson Controls, 44 Fed. Cl. at 347-48 (citing Pacific Maritime Ass'n v. United States, 123 Ct. Cl. 667, 675-77 (1952)).

Here, however, the Government did not continually accept services with the knowledge that Flexfab expected to be paid. To the contrary, the only admissible evidence submitted by Flexfab demonstrates that only after payment had been made did Henry Cook meet with DFAS and Michael Taylor to discuss payment.[5] A66, A94.

---

[5] The evidence demonstrates that DSCC discussed, with Henry Cook of C & S Industrial Supply, Capital City's failure to pay

To the extent that the DSCC Inventory Manager, Howard Crockett, contacted Flexfab to discuss delivery, this cannot constitute the basis for an implied-in-fact contract. Lockheed, 50 Fed. Cl. at 554. This Court in Lockheed stated that, "[t]here are few exceptions to the general no-privity rule for subcontractors . . . ." Lockheed, 50 Fed. Cl. at 555. There are two ways in which a subcontractor would be in privity with the Government. First, if the contractual provisions indicate that "the parties intended to give the subcontractor the right to direct appeal," then the subcontractor may be in privity with the Government. Id. Second, if the contract provides that "the contractor will act as a purchasing agent for the Government,"

---

Flexfab. This discussion occurred in August 2000, after the modification was issued (in September 1999) and after final payment had been made (in April 2000). A66, A94. This is the only admissible evidence that demonstrates the general period within which DSCC became aware of a payment problem and the existence of an escrow account. Flexfab suggests that other conversations may have taken place regarding payment. Flexfab asserts that a representative of DFAS, Phil Kover, told Henry Cook that DFAS would remit payment to an escrow account. Pl. Motion at 9; Compl. at attachment 1, ¶ 27-30. However, Mr. Kover is deceased. Therefore, any statements attributed to him are inadmissable. Fed. R. Evid. 802.

In any event, Mr. Kover was not a contracting officer for this contract and possessed no authority to bind the Government to any contract terms. Additionally, whatever conversations Henry Cook, a representative not of Flexfab but of C&S Industrial Supply, may have had with Mr. Kover appear to have occurred after the modification was issued and after at least the first payment was made to Capital City. Compl. at attachment 1, ¶ 27-30.

the subcontractor may be in privity with the Government. Id. (suggesting a third possible exception where the Government "so circumvents the authority of the contractor that the contractor becomes a mere agent of the Government"). Additionally, day-to-day direct dealings between a subcontractor and the Government do not constitute the basis for an implied-in-fact contract. Id. at 588-89.

Mr. Crockett's contact with Flexfab regarding shipment does not fall within these exceptions. The contract does not provide for a direct right of action upon the part of the subcontractor, nor does the contract provide that Capital City will act as a purchasing agent for the Government. There has been no allegation that the Government "so circumvents the authority" of Capital City. Lastly, to the extent that Mr. Crockett contacted Flexfab directly, this day-to-day contact is not sufficient to create an implied-in-fact contract. Therefore, Mr. Crockett's contact with Flexfab does not constitute a basis upon which to find privity.

## CONCLUSION

For these reasons, defendant respectfully requests that the Court grant its motion for summary judgment and dismiss the complaint with prejudice.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
by s/ Robert E. Kirschman, Jr.

HAROLD D. LESTER, JR.
Assistant Director

s/ Claudia Burke

CLAUDIA BURKE
Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202)353-7978

April 23, 2004

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 23d day of April, 2004, a copy of the foregoing Defendant's Cross Motion for Summary Judgment. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Claudia Burke