IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FLEXFAB, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 02-1096C<br>(Judge Block) |

DEFENDANT'S RESPONSE TO
PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACT

Pursuant to Rule 56(h)(2) of the Rules of this Court ("RCFC"), defendant respectfully responds to plaintiff, Flexfab LLC's ("Flexfab") proposed findings of uncontroverted facts.

Proposed Finding:

1. Flexfab is an elastomeric engineering company that specializes in the design and production of hose, ducts, flexible connectors, boots, bellows, and special shapes made from a wide range of materials for severe applications in the automotive, heavy duty truck, aerospace, government, and broad industrial sectors.

Response

1. Undisputed.

Proposed Finding:

2. Flexfab's principal place of business is located in the City of Hastings, State of Michigan.

Response:

2. Undisputed.

Proposed Finding:

3. The Defendant is the United States of America.

Response:

Undisputed.

Proposed Finding:

4. For purposes of this case the Defendant acted through its Department of Defense, Defense Logistics Agency, Defense Construction Supply Center ("DSCC").

Response:

Undisputed.

Proposed Finding:

5. The United States' Small Business Administration maintains an 8(A) Program for socially and economically disadvantaged businesses.

Response:

5. Undisputed.

Proposed Finding:

6. Flexfab was previously successful in a similar lawsuit against the Government in the Court of Claims. In 1994, Flexfab filed an action against the Government, Case No. 94-974C, based on the Government's failure to remit payment directly to Flexfab's address as required by a modified contract. Contrary to the language of the modified contract, the Government

erroneously remitted payment directly to its prime contractor and not to Flexfab. On February 8, 1996, the United States Court of Federal Claims denied the Government's summary judgment motion and granted Flexfab's summary judgment motion on liability. The Court permitted recovery under a third-party beneficiary theory and based its decision on evidence that "clearly demonstrat[ed] that the contract modifications were intended to benefit plaintiff [Flexfab]."

Response:

6. Undisputed.

Proposed Finding:

7. Flexfab has developed a working history and business relationship with C&S Industrial Supply ("C&S"), a company owned by Mr. Henry Cook.

Response:

7. Undisputed.

Proposed Finding:

8. C&S and Flexfab have a long-standing relationship of dealing with each other on contracts through the 8(A) Program based upon C&S' status as a Small Disadvantaged Business.

Response:

8. Undisputed.

Proposed Finding:

9. Over the years Flexfab has frequently served as one of the

contractors to C&S and would frequently manufacture products required by a contract between C&S and the Government.

Response:

9. Undisputed.

Proposed Finding:

10. As a result, C&S, in connection with the receipt of an award from the Government, would contract with Flexfab to serve as the manufacturer of products required by a contract between C&S and the Government.

Response:

10. Undisputed.

Proposed Finding:

11. In each of these contracts with C&S, Flexfab agreed to supply parts to the United States only if payment for its goods were made directly to Flexfab by way of a Flexfab controlled escrow account, thereby insuring that there would be no significant delay in Flexfab’s receipt of payment for its goods. The particular escrow account used by Flexfab and C&S was located at Old Kent Bank in Grand Rapids, Michigan.

Response:

11. Undisputed.

Proposed Finding:

12. Flexfab conducts all of its business with 8(A) Program and Small Disadvantaged Business contracts through an escrow account.

Response:

12. Undisputed.

Proposed Finding:

13. Flexfab insists on the use of the escrow account system of payment as a result of past contracts where such a payment plan was not in place and Flexfab experienced extensive delays in receiving payments directly from the contractors.

Response:

13. Undisputed.

Proposed Finding:

14. The contract at issue was specifically designated as an 8(A) contract, meaning the DSCC required that it be awarded to an 8(A) contractor.

Response:

14. Undisputed.

Proposed Finding:

15. The product required by the DSCC was air ducting hose.

Response:

15. Undisputed.

Proposed Finding:

16. Upon information and belief, in 1998, Flexfab was contacted by an 8(A) contractor, Capital City Pipes ("Capital City"). Capital City approached Flexfab to manufacturer the product that Capital City was to provide to the Government.

Response:

16. Undisputed.

Proposed Finding:

17. Since Flexfab had never worked with Capital City and had previously decided to not take on any new 8(A) customers, Flexfab refused to enter into a direct contract with Capital City.

Response:

17. Undisputed.

Proposed Finding:

18. Flexfab told Capital City that C&S was its minority supplier, that it was not taking on any new 8(A) customers and that if Capital City wanted to deal with Flexfab it would have to order goods from Flexfab through C&S.

Response:

18. Undisputed.

Proposed Finding:

19. Flexfab also told Capital City that it would only agree to manufacture the air ducting hose needed by Capital City and the DSCC if an escrow account was established for its benefit.

Response:

19. Undisputed.

Proposed Finding:

20. Mr. Cook of C&S subsequently contacted Flexfab to serve as the subcontractor to Capital City and produce the air ducting

hose required by the prime contract between Capital City and the DSCC.

Response:

20. Undisputed.

Proposed Finding:

21. On June 29, 1999, the DSCC awarded contract SP0740-99-C-1004 to Capital City.

Response:

21. Undisputed.

Proposed Finding:

22. At the time that the DSCC entered into the June 29, 1999 contract, the DSCC knew that Flexfab was the manufacturer of the air ducting hose that Capital City had agreed to distribute to the DSCC.

Response:

22. Undisputed.

Proposed Finding:

23. The DSCC's knowledge of Flexfab's involvement in the potential contract predated the execution of the contract by at least three months.

Response:

23. Disputed. DSCC had knowledge that Capital City was considering Flexfab as its supplier. The decision did not become final until June 23, 1999. A17.

Proposed Finding:

24. Prior to the June 29, 1999, contract the DSCC dealt with Flexfab as both an 8(A) supplier and as a direct supplier to the government.

Response:

24. Undisputed.

Proposed Finding:

25. The DSCC knew that Flexfab was located in Michigan prior to the June 29, 1999, contract or the events of this case.

Response:

25. Disputed. Michael Taylor, of the DSCC Small Business Office, testified that he knew the location of Flexfab's business. There is no additional evidence that any other agent of DSCC knew the location of Flexfab's business.

Proposed Finding:

26. Prior to its contact with Capital City, the DSCC had previously worked with C&S as an 8(A) supplier.

Response:

26. Undisputed.

Proposed Finding:

27. Prior to the June 29, 1999, contract the DSCC had also dealt with Flexfab as a manufacturer to C&S.

Response:

27. Undisputed.

Proposed Finding:

28. The DSCC knew that Capital City, prior to its involvement with Flexfab, had a history of payment problems.

Response:

28. Disputed. In the testimony cited by Flexfab, Mr. Taylor and Ms. Spratt mention Capital City's payment issues pursuant to another contract but do not state that these problems predated Capital City's involvement with Flexfab. See Taylor Dep., p. 41, lns 19-24 - p. 42 lns 1-7; p. 46, lns 1-9, Exh. H to Plaintiff's Brief in Support of Motion for Summary Judgment; Spratt Dep., p. 33, lns 18-21, Exh. I to Plaintiff's Brief in Support of Motion for Summary Judgment.

Proposed Finding:

29. The DSCC knew of Flexfab's desire to have an escrow account set up in connection with its prime contract with Capital City.

Response:

29. Disputed. The cited portion of Mr. Taylor's deposition states that sometime after DSCC entered into its contract with Capital City, he became aware of another subcontractor's desire to have an escrow account set up pursuant to another contract. Mr. Taylor does not discuss Flexfab's alleged desire. See Taylor Dep., p. 41, lns 6-18, Exh. H to Plaintiff's Brief in Support of Motion for Summary Judgment.

Proposed Finding:

30. Upon learning of Capital City's payment problems, the DSCC contacted Capital City and discussed setting up an escrow to ensure that the manufacturer of the product required by the government received proper payment.

Response:

30. Disputed. The cited portions of Mr. Taylor's deposition state that Mr. Taylor spoke to Capital City regarding their payments pursuant to a separate contract. See Taylor Dep., p. 45 lns 1-24 – p. 46 lns 1-9; p. 47 lns 16-24- p. 48 lns 1-10; p. 50 lns 8-23, Exh. H to Plaintiff's Brief in Support of Motion for Summary Judgment.

Proposed Finding:

31. The DSCC was interested in ensuring that the manufacturer of the product to Capital City received proper payment because it wanted the product.

Response:

31. Disputed. Mr. Taylor's statements were limited to another contract. In fact, Mr. Taylor specifically stated that he did not recall having any similar conversations regarding Flexfab. See Taylor Dep., p. 45 lns 1-24 – p. 46 lns 1-9; p. 47 lns 16-24- p. 48 lns 1-10; p. 50 lns 8-23, Exh. H to Plaintiff's Brief in Support of Motion for Summary Judgment.

<u>Proposed Finding</u>:

32. Capital City agreed to the establishment of an escrow account.

<u>Response:</u>

32. Undisputed that Capital City agreed to the establishment of an escrow account in another contract with another subcontractor. Disputed that Capital City agreed to the establishment of an escrow account in this matter involving Flexfab.

<u>Proposed Finding</u>:

33. The DSCC knew that the escrow account in this case was established to ensure that the manufacturer received payment.

<u>Response:</u>

33. Disputed. Mr. Taylor's comments state only that he was aware of "someone's desire" for an escrow agreement. His comments do not mention Flexfab. Specifically, Mr. Taylor's statements were limited to another contract. In fact, Mr. Taylor specifically stated that he did not recall discussing the issue of an escrow account with Flexfab. <u>See</u> Taylor Dep., p. 41, lns 6-18, p. 45 lns 1-24, p. 46 lns 1-9, p. 47 lns 16-24, p. 48, lns 1-10, p. 50 lns 8-23 Exh. H to Plaintiff's Brief in Support of Motion for Summary Judgment.

<u>Proposed Finding</u>:

34. The June 29, 1999, contract both identified Flexfab as the manufacturer of the air ducting hose required pursuant to DSCC’s

prime contract with Capital City and also specifically directed the DSCC’s payment to the escrow account controlled by Flexfab.

Response:

34. Disputed. The contract does not mention an escrow account controlled by Flexfab. It only reflects a certain remittance address. A17.

Proposed Finding:

35. Pursuant to the plain language of the June 29, 1999, contract the DSCC was to direct all payments to the escrow account located in Grand Rapids and was not to make any payments directly to Capital City, its 8(A) supplier.

Response:

35. Disputed. The contract does not mention an escrow account. It contains a remittance address of a bank in Grand Rapids. A17. The contract does not state that payments are not to be made to Capital City. Id.

Proposed Finding:

36. Flexfab and the DSCC set up the escrow account to ensure that Flexfab would receive proper payment and that the DSCC would receive the goods that it desired from Flexfab.

Response:

36. Disputed. Mr. Taylor's comments regarding the rationale for setting up an escrow account concern another contract. He specifically denied ever having discussed an escrow agreement or

account regarding Flexfab. See Taylor Dep., p. 48, Exh. H to Plaintiff's Brief in Support of Motion for Summary Judgment.

Proposed Finding:

37. Flexfab would not have supplied the air ducting hose required by Capital City and the Government if the parties had not agreed to direct the DSCC's payment directly to the Flexfab controlled escrow account.

Response:

37. Disputed. The parties to the contract never agreed to direct payment to an escrow account controlled by Flexfab. The parties only agreed to direct payment to a certain remittance address, the identity of which was unknown to DSCC. A45.

Proposed Finding:

38. On September 27, 1999, a contracting officer for the DSCC executed modified contract P00001.

Response:

38. Undisputed.

Proposed Finding:

39. The September 27, 1999, Modified contract P00001 is Exh. G to Plaintiff's Brief in Support of Motion for Summary Judgment.

Response:

39. Undisputed; there is only one P00001 modification and the document speaks for itself.

Proposed Finding:

40. Modified contract P00001 directed the DSCC to remit payment to Old Kent Bank, Corporate Trust, in Grand Rapids, Michigan.

Response:

40. Undisputed.

Proposed Finding:

41. Although the parties executed the modification, the original June 29, 1999, contract correctly identified Flexfab as the manufacturer of the air ducting hose and correctly directed payment to the escrow account located in Grand Rapids, Michigan.

Response:

41. Disputed. The original June 29, 1999 contract did not mention payment to an escrow account. It only reflects a certain remittance address. A17. In addition, part of the deposition testimony cited by Flexfab indicates that the contract contained two different remittance addresses. See Spratt Deposition, pp. 78-80, Exh. I to Plaintiff's Brief in Support of Motion for Summary Judgment.

Proposed Finding:

42. Due to the June 29, 1999, contract the September 1999, modification was actually unnecessary.

Response:

42. Disputed. The modification was necessary because the remittance address had not been changed.

43. The DSCC is responsible for determining that a contract

modification is implemented.

Response:

43. Undisputed.

Proposed Finding:

44. After a modification, the DSCC should follow up to ensure that the modification actually takes place and is correctly entered into the DSCC's system.

Response:

44. Undisputed that Ms. Spratt testified that if she had been the contract administrator, she would have followed up. However, she stated that such follow-up was not required. See Spratt Deposition, pp. 62, lns 22-24 – 64, lns 1-13, Exh I to Plaintiff's Brief in Support of Motion for Summary Judgment.

Proposed Finding:

45. On approximately January of 2000, Howard Crockett, an agent of the DSCC employed at the time as an inventory manager supporting supplies to the military services, requested that Flexfab expedite the delivery of the air duct to the government due to an urgent need by the United States Air Force.

Response:

45. Undisputed, however, Mr. Crockett is not a contracting officer.

Proposed Finding:

46. Mr. Crockett made the request for expedited delivery by

contacting Flexfab directly and by informing Thelma Williams of Capital City of the request.

Response:

46. Undisputed.

Proposed Finding:

47. The DSCC's urgent need for the air ducting hose was the result of a demand by the Tinder Air Force Base in Omaha City. The air ducting hose supplied by Flexfab provided coolant to the aircraft and without the hose the Tinder Air Force Base would have been unable to perform any work on the aircraft.

Response:

47. Undisputed.

Proposed Finding:

48. Prior to Flexfab's shipment of the air ducting hose to the DSCC, a government agent inspected the air ducting hose at Flexfab.

Response:

48. Undisputed.

Proposed Finding:

49. A government agent accepted the air ducting supplied and delivered by Flexfab.

Response:

49. Undisputed.

Proposed Finding:

50. Subsequent to receiving the air ducting hose from Flexfab, the DSCC remitted payment to Capital City and not to the escrow account identified in the June 29, 1999, contract or the September 27, 1999, modification.

Response:

50. Undisputed that DSCC remitted payment to Capital City. Disputed that the account identified in the June 29, 1999 contract or the modification was identified as an escrow account.

Proposed Finding:

51. Howard Griffin, in his authority as the Associate Director of the Small and Disadvantaged Business, attended a meeting with Mr. Henry Cook of C&S, and Mr. Phil Kover and Michael Taylor of the DSCC, to discuss Flexfab's failure to get paid for the air ducting hose that it manufactured and delivered to the DSCC.

Response:

51. Undisputed.

Proposed Finding:

52. The DSCC, after its failure to direct payment into the escrow account as required by the June 29, 1999 contract and September 27, 1999 modification, engaged in efforts to ensure Flexfab received payment.

Response:

52. Undisputed that DSCC failed to make payments to the

remittance address listed in the modification. Disputed that this was a known escrow account. Undisputed that DSCC engaged in efforts, after acceptance and payment had been made, to ensure that Flexfab received payment.

Proposed Finding:

53. The Government erroneously and incorrectly directed payment for air ducting hose to Capital City in the amount of $452,031.60.

Response:

53. Disputed. The Government did not remit payment to the address contained in Modification P0001, but the purpose of, or the owner of, the address was not indicated within the contract.

Proposed Finding:

54. The document identified as Statement of Account dated March 11, 2000, attached at Tab 2 of the DeCamp Affidavit, Exh. A to Plaintiff's Brief in Support of Motion for Summary Judgment, identifies the invoice number, invoice date and invoice amount for the shipments made by Flexfab to the Government. Pursuant to the parties' contract, Flexfab shipped air ducting hose directly to the Government on approximately February 22, 2000, February 29, 2000, March 7, 2000 and March 14, 2000. Flexfab shipped goods in the amount of $452,031.60 to the Government.

Response:

54. Undisputed.

Proposed Finding:

55. Flexfab, in an attempt to collect the amount due, contacted Capital City but to date has been unsuccessful in recovering the amount due.

Response:

55. Undisputed.

Proposed Finding:

56. Upon information and belief, Capital City is currently seeking protection from its creditors through bankruptcy.

Response:

56. Undisputed.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
by s/ Robert E. Kirschman, Jr.

HAROLD D. LESTER, JR.
Assistant Director

s/ Claudia Burke

CLAUDIA BURKE
Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202)353-7978

April 23, 2004

Attorneys for Defendant