IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FLEXFAB, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 02-1096C<br>(Judge Block) |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Pursuant to Rules 7.1(c) and 56(h) of the rules of this Court ("RCFC"), defendant, the United States, respectfully submits this reply to the opposition to our cross-motion for summary judgment, filed by plaintiff, Flexfab, LLC ("Flexfab").

I. DSCC Did Not Intend To Benefit Flexfab

As we demonstrated in our cross-motion for summary judgment and our opposition to Flexfab's cross-motion for summary judgment, Flexfab has not demonstrated that the Defense Supply Center Columbus ("DSCC") had any express or implied intent to benefit Flexfab. The documentary evidence does not contain any discernable intent to benefit Flexfab, nor does the testimonial evidence. It is undisputed that DSCC issued a modification to change the remittance address in the contract. A45.[1] Contrary to Flexfab's assertions, however, DSCC was not aware that the

[1] Citations to "A__" refer to our appendix, filed with our cross-motion for summary judgment on March 23, 2004. Citations to "Pl. App. Tab __" refer to Flexfab's supplemental attachments, filed with its opposition, on April 20, 2004.

change in the remittance address, requested by the prime contractor, Capital City Pipes, Inc. ("Capital City"), had any connection to Flexfab. Pl. Opposition at p. 3.

DSCC had no contact with any representatives of Flexfab regarding the change in remittance address. A79, A89. There is nothing contained in the contacts between Capital City and DSCC that indicate either parties' intention to benefit Flexfab.[2] For example, in its initial request that payment be remitted to Old Kent Bank, Capital City stated:

> Capital City Pipes, Inc. request the remittance address to be:
>
> Capital City Pipes, Inc.
> C/O ABA #07200052
> Old Kent Bank, Corp Trust
> P.O. Box 144
> Grand Rapids, MI 49501-0144

A17. Nothing in this request states or implies that the change in address was intended to benefit Flexfab. Instead, the language indicates that the change in address reflects a mere alternate remittance address for Capital City. Nothing in the language even indicates the presence of an escrow agreement. Nor were DSCC agents aware that the new remittance address was an

---

[2] In its opposition, Flexfab asks "for whom were [the original contract and the modification] intended to benefit?" Pl. Opp. at 11. According to DSCC, the only party intended to benefit from the original contract and the modification was Capital City. A40.

escrow account controlled by Flexfab.[3] A89, A78A. DSCC employees testified that, regardless of the remittance address, they intended to pay Capital City. A40 (stating "we strictly dealt with the prime"). What Capital City did with its payment was of no consequence to DSCC. Id.

Contrary to Flexfab's assertions, Michael Taylor, of DSCC's Small Business Administration, was not aware of an escrow agreement between Flexfab and Capital City, until after DSCC issued the modification in this case. Pl. Opp. at 8. A93. Therefore, he could not have indicated any intent upon DSCC's part to benefit Flexfab at the time of the modification or the initial contract.[4] In any event, Mr. Taylor is not a representative of DSCC authorized to bind the Government. As we demonstrated in our motion for summary judgment and opposition, only the contracting officer can bind the Government. See, e.g., Trauma Service Group v. United States, 104 F.3d 1321, 1325 (Fed.

---

[3] Pre-award contracting officer, Anita Luich, stated that it was not uncommon for prime contractors to have a remittance address in a different state than the prime contractor's headquarters. See Attachment A, attached to this reply.

[4] Flexfab contends that the course of dealing between the parties indicates an intent to benefit Flexfab. Pl. Opp. at 17. As we have demonstrated in this reply and in our cross-motion for summary judgment and reply, any agreements Flexfab may have had with its prime contractors did not constitute agreements between Flexfab and the Government. Therefore, there was no discernable course of dealing, regarding payment, between Flexfab and DSCC.

Cir. 1997) (specific authority required to bind the Government).

Flexfab's reliance upon deposition testimony to support its contention that DSCC incorrectly remitted payment to Capital City is unavailing. DSCC employees stated that the modification was not entered into the computer system at DSCC. Pl. App. 112. DSCC employees did not state that they mistakenly paid Capital City. In fact, DSCC employees specifically stated that they considered any payment to be payment to Capital City, regardless of the address.[5] A28, A73. In any event, as we demonstrate below, Capital City had the additional requirement of changing its electronic payment database information before any payment address could be fully changed. Capital City did not make this change to the database.

In its opposition brief, Flexfab again attempts to cloud the issue by suggesting Flexfab's alleged refusal to supply air duct hose to Capital City without an escrow agreement is evidence of intent to benefit Flexfab. Pl. Opp. at 5. In support of its incorrect conclusion, Flexfab relies upon incorrect facts. Specifically, Flexfab states, "[o]nly after receiving

---

[5] To the extent that Mr. Taylor stated that payments were made directly to Capital City and not to an escrow account, this statement reflects his understanding of the situation <u>after</u> all payments had been made by DFAS. This statement does not reflect DSCC's intent to pay Flexfab. Pl. App. 106.

confirmation from not one but two controlling contractual documents . . . did Flexfab agree to manufacture and ship the air ducting hose . . . . Pl. Opp. at 5. Capital City quoted Flexfab as the manufacturer in its June 23, 1999 letter that became part of the final contract. A4.[6] Thus, as far as the two parties to this contract were aware, Flexfab had already agreed to manufacture the air ducting hose before the parties entered into the contract on June 29, 1999. Nothing in the citations cited by Flexfab indicates that Flexfab agreed only after receiving confirmation in the form of the contract and the modification. In any event, whether Flexfab did indeed refuse to provide air duct hose to Capital City is irrelevant to this case. DSCC was not a party to any agreement that Capital City may have held with Flexfab, therefore, it could not have intended to benefit Flexfab.

Additionally, Flexfab's treatment of the relevant case law is unpersuasive. Third-party beneficiary status is an "exceptional privilege" in that it permits a suit against the Government pursuant to the Tucker Act despite the absence of privity of contract. Glass v. United States, 258 F.3d 1349, 1354 (Fed. Cir. 2001). As an exception to sovereign immunity, it must

[6] Contrary to Flexfab's assertion, we do not dispute that Flexfab manufactured the goods in this case. Pl. Opp. at 8 n. 5.

be narrowly construed. See, e.g., National Leased Housing Assoc. v. United States, 32 Fed. Cl. 454, 460 (1994). Flexfab correctly acknowledges that the cases cited in our brief address situations in which an assignment or a joint payment agreement resulted in third-party beneficiary status for a subcontractor. Pl. Opp. at 5. However, Flexfab fails to acknowledge the exceptional nature of third-party beneficiary status, and states "not one of the cases in any way indicates that the absence of either such an agreement prevents a party from achieving the status of a third-party beneficiary." Id. An absence of controlling case law is insufficient to demonstrate third-party beneficiary status.

The only case law that arguably supports Flexfab's argument is an unpublished decision of this Court, concerning the same plaintiff. In Flexfab, Inc. v. United States (Fed. Cl. 94-974C, Feb. 8, 1996), this Court found a third-party beneficiary relationship were Flexfab contacted DSCC directly to discuss an agreement reached with the prime contractor. Pl. App. at Tab 2 p. 12. Specifically, Flexfab advised the DSCC contract administrator that it had reached an agreement with the prime contractor that would permit Flexfab to endorse any checks the Government issued to the prime contractor, relating to the purchase orders at issue. Id. at p. 11. The Court found this

contact sufficient to demonstrate that the contract modification was intended to benefit Flexfab. Id. at p. 12. Here, we have no communication between Flexfab and DSCC. Indeed, we have no similar communication between Capital City and DSCC. Accordingly, this Court should find that Flexfab was not the intended third-party beneficiary of this contract.

## II. The Contract's Electronic Payment Provision Cannot Be Ignored

Capital City was required to comply with the electronic payment provision contained in the contract. Payments due pursuant to the contract were to be made in accordance with FAR 52.232-33, which mandates payment through electronic funds transfers. A34. The starting place for interpreting a contract is the text of the contract itself. Jowett, Inc. v. United States, 234 F.3d 1365, 1368 (Fed. Cir. 2000); McAbee Construction, Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996); accord Hol-Gar Manufacturing Corp. v. United States, 169 Ct. Cl. 384, 395, 351 F.2d 972, 979 (1965) ("interpretation which gives a reasonable meaning to all parts of an instrument will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless or superfluous"). In this case, the contract incorporated the master agreement, which clearly incorporated by reference FAR

Clause 52.232-33. A21-2. FAR 52.232-33 is therefore an express term of the contract. Firth Constr. Co., Inc. v. United States, 36 Fed. Cl. 268, 275 (1996).

In pertinent part, FAR 52.232-33 provides that:

> all payments by the Government under this contract shall be made by electronic funds transfer (EFT). . . The Government shall make payment to the contractor using the electronic funds transfer information contained in the Central Contractor Registration (CCR) database.

FAR 52.232-33(a) and (b) (emphasis added).

As we demonstrated in our motion for summary judgment, pursuant to 52.232-33(b), Capital City was responsible for providing updated information. Section 52.232-33(b) states, "[i]n the event that the EFT information changes, the Contractor shall be responsible for providing the updated information to the CCR database." The FAR also specifies the manner in which the contractor must change the information contained in the CCR. Specifically, section 52.204-7 states:

> The Contractor is responsible for the accuracy and completeness of the data within the CCR database, and for any liability resulting from the Government's reliance on inaccurate or incomplete data. To remain registered in the CCR database after the initial registration, the Contractor is required to review and update on an annual basis from the date of initial registration or subsequent updates its information in the CCR database to ensure it is current,

> accurate and complete. Updating information in the CCR does not alter the terms and conditions of this contract and is not a substitute for a properly executed contractual document.

52.204-7 (emphasis added).

According to the electronic payment transaction records, neither Flexfab nor the Old Kent Bank address was identified in the CCR. A53-64. Therefore, in accordance with FAR 52.232-33, the Government made an electronic funds transfer to the payee identified in the CCR, i.e., Capital City at its Talahassee address. Id. Indeed, because payment was made to the payee identified in the CCR, "the Government is deemed to have made payment and the Contractor is responsible for recovery of any erroneously directed funds." FAR 52.232-33(e)(2)(i) (emphasis added). Although Flexfab contends that the contract identified Capital City's account at Old Kent Bank as the appropriate payment location, the contract also expressly required the Government to pay to the address that Capital City identified in the CCR and, pursuant to FAR 52.232-33, obligated Capital City to resolve any discrepancies.

Contrary to Flexfab's assertion, this requirement does not "nullify" the contract modification; it supplements it and acts as an additional safeguard to maintain the integrity of electronic payment. The FAR is clear that the CCR does not alter

the terms of the contract. 52.204-7. Instead, it is a separate mechanism by which contractors maintain their information for payment purposes. In fact, contractors can alter their CCR registries on the CCR website and are required to renew their registrations annually. http://ccr.gov (stating "[y]ou must renew your registration at least once a year. If you do not renew your registration it will expire. An expired registration will affect your ability to conduct business (receive contract awards or payments) with the government."). Modification to a contract does not, therefore, change the information contained in the CCR. The contractor is also required to update the CCR. Capital City failed to do so.

Also, contrary to Flexfab's assertions, there was undisputed testimony that DFAS, not DSCC, is responsible for payment. A86. Therefore, DSCC employees know little to nothing about the technicalities of payment. A23, A55. To the extent that they were able to speak to this issue, which is admittedly outside of their realm of knowledge, DSCC employee Michael Taylor stated, "DFAS folks, when it's time for payment, they look at the information in the CCR . . . the CCR is the system where the contractors register. And when they make payment, they go by the remittance address in the CCR . . . . "[7] Capital City did not

[7] Mr. Taylor continued that it was his mistaken understanding that a modification would override the information

change the remittance address in the CCR. Flexfab's complaint should be directed to Capital City, not the Government.

CONCLUSION

For these reasons, defendant respectfully requests that the Court grant its motion for summary judgment and dismiss the complaint with prejudice.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
by s/ Robert E. Kirschman, Jr.

HAROLD D. LESTER, JR.
Assistant Director

s/ Claudia Burke

CLAUDIA BURKE
Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202)353-9063
Fax: (202)307-0972

Attorneys for Defendant

OF COUNSEL:

VASSO K. MONTA
Associate Counsel
Defense Supply Center
Columbus
3990 East Broad St.
Columbus, OH 43216

May 7, 2004

---

in the CCR. A95.

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 7th day of May, 2004, a copy of the foregoing DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Claudia Burke